580 A.2d 1067

**STATE of Maryland**

v.

**Ethel WATSON.**

**No. 166, Sept. Term, 1989.**

Court of Appeals of Maryland.

Oct. 18, 1990.

48

Audrey A. Creighton, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired) Specially Assigned.

CHASANOW, Judge.

On September 13, 1987, at approximately 5:45 p.m., the Harford County Police and an ambulance crew responded to a "911" call initiated by Ethel Watson (Watson) from his motel room at the Chase Manor Motel. When they arrived at Watson's room, they found the dead body of Watson's girlfriend, Jeanette Hill, on the bed. Watson was next to her trying to revive her. It was apparent that Ms. Hill had been dead for some time. While police and ambulance personnel were at the scene, Watson appeared calm, nonchalant, unexcited, and uncaring. It was only later, when talking to police, that he became nervous. Although he admitted being with Ms. Hill at the time of her death, Watson gave conflicting versions of what had occurred. An autopsy revealed that Ms. Hill's death had been caused by manual strangulation and multiple blows with a human fist or other blunt instrument. The autopsy also revealed that Ms. Hill had been pregnant.

Watson was arrested and charged with first-degree murder. Watson elected a jury trial and, at his trial, testified that on the fatal day he picked up Ms. Hill, with whom he had a longstanding relationship, to take her to Aberdeen to

visit members of her family. According to Watson, on the way to Aberdeen he and Ms. Hill purchased some liquor and then rented a room at the Chase Manor Motel. Around 2:30 p.m., Watson took a nap. At approximately 4:50 p.m., he heard Ms. Hill calling from the bathroom. He rushed into the bathroom and found her squatting in the shower. Watson picked her up, carried her to the bed, dried her, and helped her to dress. Watson testified that he then went outside and started his car. When Ms. Hill did not emerge from the room, Watson returned and found her lying on the floor. He put her back on the bed and, at that time, noticed blood coming out of her mouth. When more blood appeared, Watson "decided to call for an ambulance."

■ The defense moved in limine to preclude the State from cross-examining Watson about a 1981 conviction for "second-degree rape" under Maryland Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Article 27, § 463(a)(3). The trial judge, citing *Prout v. State*, 311 Md. 348, 363, 535 A.2d 445, 452 (1988), properly precluded such cross-examination because the second-degree rape conviction was not a common law felony, *crimen falsi*, or lesser crime bearing on credibility and, therefore, could not be used to impeach Watson's credibility.

Later in his defense, Watson called eight character witnesses, all of whom testified to their opinions as to Watson's peaceful and non-violent character.[1] Over objection, the character witnesses were asked by the State on cross-examination if they were aware of Watson's conviction of second-degree rape and whether this knowledge caused them to change their opinions. Most of the witnesses

---

1. The State contends in its brief that Watson's character witnesses also testified that he was "law-abiding." At oral argument, the State acknowledged that this character trait was never testified to on direct examination, but was only alluded to by the Assistant State's Attorney in cross-examination. Therefore, Watson did not place this character trait in dispute, and the State was precluded from cross-examining the witness about Watson's "law-abiding" character. *See McCormick on Evidence* § 191 at 566–67 (3rd ed. 1984); 1 *Wharton's Criminal Evidence* § 229 at 493–94 (13th ed. 1972).

responded that they were aware of the earlier conviction and that it had no effect on their opinions.

Defense counsel objected to the use of the "second-degree rape" conviction to cross-examine the character witnesses and pointed out that the second-degree rape conviction was for "statutory rape," [2] under Md.Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Art. 27, § 463(a)(3), which makes it a crime to have vaginal intercourse, consensual or not, with a child under 14 years of age when the defendant is more than four years older than the victim. Defense counsel contended that the "second-degree rape" did not involve force and that the conviction was for having sexual intercourse with a consenting 13–year–old girl. This was supported by the record of the second-degree rape conviction proffered by the State which included a pre-sentence investigation containing the following "Description of Present Offense":

> "The victim who is thirteen years old states that she and the defendant engaged in vaginal intercourse on more than one occasion, but was never forced to do so. Further the victim stated that she was in love with the accused."

The trial judge, although he had excluded the use of the conviction to impeach the defendant's credibility, admitted it in cross-examination of the character witnesses to test the basis for each of their opinions of the defendant's character for peacefulness and non-violence.

Watson was convicted of first-degree murder and sentenced to life imprisonment. He appealed and, in an unreported opinion, the Court of Special Appeals reversed the conviction, finding that the trial judge erred in admitting Watson's prior conviction of second-degree rape during cross-examination of defendant's character witnesses. We

---

**2.** The phrase "statutory rape" was once used to describe the statutory crime of engaging in sexual intercourse with a child below the legal age of consent. Today, there are a number of acts which fall under the term "rape" by statute. *See* Maryland Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Article 27, § 463.

granted certiorari to determine whether Watson's prior conviction was admissible to impeach the opinions expressed by defense witnesses who testified to Watson's good character for peacefulness and non-violence.

It is a basic principle of our legal system, requiring no citation of authority, that the State may not offer, as proof of guilt, evidence that the defendant is a person of bad character and, therefore, likely to commit the offense charged. The defendant may, however, offer as proof of innocence evidence of good character to establish that it is unlikely that a person of such good character would commit the crime. This one-sided, but helpful, option which is available to the defendant is not without risk. The potential price that a defendant may pay for offering proof of his or her good character is to throw open an avenue of inquiry previously foreclosed to the State.

If the defendant calls witnesses to testify to his or her good character for a relevant character trait, then the prosecutor may offer evidence to establish the defendant's bad character for the same trait, *Comi v. State*, 202 Md. 472, 478–79, 97 A.2d 129, 131–32, *cert. denied*, 346 U.S. 898, 74 S.Ct. 223, 98 L.Ed. 399 (1953); 5 L. McLain, *Maryland Evidence* §§ 404.1(c) at 342–44, and 404.2 at 346–48 (1987), and may cross-examine the defendant's character witnesses about their knowledge of the defendant's character or the soundness of their opinions. *Winters v. State*, 301 Md. 214, 232, 482 A.2d 886, 895 (1984); *Taylor v. State*, 278 Md. 150, 152, 360 A.2d 430, 432 (1976). *See also Durkin v. State*, 284 Md. 445, 397 A.2d 600 (1979) (character witness must have adequate basis for opinion). Cross-examination of defense character witnesses may be a very potent weapon for the State. The State may question a character witness about any crimes and offenses committed by the defendant which are relevant to the character trait testified to by the witness. *Comi*, 202 Md. at 478–79, 97 A.2d at 131–32. The purpose of this inquiry is to test the witness' knowledge, as well as the validity of the opinion expressed by the witness.

*See Winters*, 301 Md. at 232, 482 A.2d at 895; *Taylor*, 278 Md. at 152, 360 A.2d at 432.

A character witness' testimony about a defendant's good character or good reputation is weakened if the witness did not know of, or had not heard about, relevant criminal acts committed by the defendant. Alternatively, establishing that a character witness was aware of relevant criminal acts committed by the defendant and still maintains a good opinion of the defendant's character or reputation despite such knowledge may undermine the witness' judgment or the soundness of the witness' opinion.

■ Improper cross-examination of a character witness can be highly prejudicial. As the Supreme Court recognized in *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), merely asking questions suggesting past criminal acts committed by an accused may "waft an unwarranted innuendo into the jury box." *Id.* at 481, 69 S.Ct. at 221, 93 L.Ed. 176. Cross-examination of a character witness about criminal acts not clearly relevant to the character traits inquired into on direct examination should not be permitted. When a character witness testifies regarding a specific character trait, cross-examination must be limited to those crimes or acts of the defendant which evidence bad character for that specific character trait. Because of the tremendous potential for prejudice in this area, trial judges must be careful to assure that only relevant, probative cross-examination is permitted. For example, if a defendant is charged with embezzlement and calls character witnesses to testify to his good character for honesty, those witnesses should not be cross-examined about prior assaults the defendant may have committed. Prior assault convictions are not relevant to the character trait of honesty. *State v. Duckett*, 306 Md. 503, 512, 510 A.2d 253, 257–58 (1986). Similarly, if a defendant is on trial for a crime of violence and calls witnesses for his good character for peacefulness, his prior convictions for embezzlement would not be relevant to his character for the trait of peacefulness.

In *Aaron v. United States,* 397 F.2d 584 (5th Cir.1968), the defendant, charged with embezzlement and related offenses, offered character testimony about his good reputation for "honesty and fair dealing." It was held to be error for the prosecutor to ask on cross-examination of the character witness whether the witness had heard that the defendant was fired from his job at a previous bank because of an "illicit affair" with a woman. The court stated:

> "Appellant was on trial for a crime which involved the question of his honesty and fair dealing. The direct examination of his character witness was properly limited to these areas. Rumors of an illicit affair with a woman, even if these rumors were true, were wholly immaterial to the character traits involved in this case. The question was therefore improper, and the defense objection was properly sustained."

*Id.* at 585.

Louisell and Mueller in their multi-volume set entitled *Federal Evidence* suggest, when the State seeks to cross-examine a character witness about prior misconduct of an accused, that the trial judge should, outside of the presence of the jury: 1) determine that there is a good faith basis for the inquiry; 2) determine that the acts or events about which the prosecutor proposes to inquire are relevant to the particular character trait testified to by the witness on direct examination; 3) determine that the acts are not too remote in time to be relevant cross-examination of the character witness; 4) reject any inquiry where the prejudicial effect outweighs the probative value; and 5) if requested, instruct the jury that the purpose of the question is only to test the basis for the character witness' testimony. 2 D. Louisell & C. Mueller, *Federal Evidence,* § 138 at 152 (1985).

 Generally, when inquiring about relevant prior convictions, the cross-examiner is limited to the name of the crime, the time and place of conviction, and the punishment. *McCormick on Evidence* § 43 at 98 (3rd ed. 1984); *Foster*

*v. State,* 304 Md. 439, 469–70, 499 A.2d 1236, 1251–52 (1985), *cert. denied* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986). The cross-examiner is precluded from showing details or circumstances of aggravation. *Id.* There may, however, be instances where the name of the crime does not indicate its nature or where, as in the instant case, the name of the crime may even be misleading.

█ The crime of "second-degree rape," under Art. 27 § 463(a), includes vaginal intercourse by force or threat of force and against the will and without consent of the victim. The form of second-degree rape of which Watson was convicted did not require that vaginal intercourse be accomplished by force or threat of force and without the consent of the victim. It was established that Watson's prior conviction was for non-violent, consensual intercourse with a 13–year–old girl. To simply characterize this act as second-degree rape without further explanation was misleading and prejudicial. At least, the judge should have considered the specific subsection rather than solely the generic name of the crime "second-degree rape" when determining whether the conviction was relevant and admissible for impeachment. *See United States v. Papia,* 560 F.2d 827 (7th Cir.1977). Therefore, although most acts of second-degree rape would be relevant to show that the perpetrator is not a peaceful and non-violent person, we must determine whether consensual sexual intercourse with a 13–year–old girl indicates that Watson is not a peaceful and non-violent man.

In determining whether evidence of a prior criminal act may be used to impeach character testimony, the trial judge must first find that the proffered evidence is relevant, *i.e.,* that it impugns the particular character trait or traits in issue. In the instant case, the threshold question is whether Watson's prior conviction of second-degree rape impugns the specific character traits of peacefulness and non-violence.

The State argues in this case that "statutory rape" is an act of violence because the victim was incapable of consent

as a matter of law. "Violence," in the conventional sense, is not an element of the particular crime of which Watson was convicted. Art. 27, § 463(a)(3). The crime of second-degree rape based on the defendant having sexual intercourse with a consenting 13–year–old girl bears little, if any, relationship to the defendant's character for peacefulness and non-violence.[3]

This Court addressed an analogous situation in *Wentz v. State*, 159 Md. 161, 150 A. 278 (1930). In *Wentz*, the defendant was charged with incest, a statutory offense making it a crime to engage in sexual intercourse, consensual or otherwise, with a person "within the degrees of consanguinity within which marriages are prohibited by law . . . ." *Id.* at 162, 150 A. at 279. Defendant was precluded at trial from presenting testimony of character witnesses regarding his reputation as a "peaceable and law abiding" person. *Id.* at 166, 150 A. at 280. This Court held that "the trait manifesting itself in the crime of incest or other sexual offense is not [negated] by his being 'peaceable and law-abiding.' " *Id.*

We, therefore, agree with the Court of Special Appeals that Watson's second-degree rape conviction was "irrelevant to the impeachment issue for which it was offered." Even if we were to assume that Watson's second-degree rape conviction was at least minimally probative to impeach the opinions expressed by Watson's character witnesses, the probative value of the conviction was substantially outweighed by its prejudice, *i.e.*, the probability that the jury would misunderstand the nature of the conviction and misuse the evidence. When ruling on the admissibility of prior criminal acts to impeach character witnesses, courts

---

**3.** It was uncontroverted that the victim of Watson's second-degree rape was 13 years of age and consented to the sexual act. We do not mean to imply that sexual acts on young children who offer no resistance can never be acts of violence. *See, e.g., People v. James,* 9 Cal.App.2d 162, 48 P.2d 1011 (1935), where the court held that a sexual offense on a five-year-old girl was an act of "violence."

have a responsibility to weigh probative value against prejudice. *McCormick on Evidence, supra,* § 191 at 569.

Watson's prior conviction was for having consensual sexual intercourse with a 13–year–old girl. The probative value of that criminal act to impeach character testimony that Watson is peaceful and non-violent is at best minimal. Watson's prior criminal act was repeatedly referred to as a "second-degree rape." Rape in any degree without further explanation commonly would be perceived as a vicious, violent, brutal sexual act. Watson's criminal act, though reprehensible, did not involve any element of force and violence. Its probative value, if any, was substantially outweighed by the potential prejudice of the jury misunderstanding the nature of the crime Watson committed, as well as the potential prejudice of the jury improperly drawing the inference that anyone who commits a brutal, vicious, violent crime like rape might be likely to commit a brutal, vicious, violent murder. We note that one character witness who was aware of the conviction did refer to the crime as "statutory rape," but this did not remove the potential confusion about the nature of the criminal act. We hold that Watson's conviction for having vaginal intercourse with a consenting 13–year–old female had such little probative value on the issue of whether he had a peaceful or non-violent character, and such a high potential for unfair prejudice by the imprecise, possibly misleading, and inflammatory representation of his crime as "second-degree rape," that admission of such evidence was error.

■ "Our cases traditionally have required that the ... aggrieved party[ ] establish not only error, but demonstrate as well some resultant substantial harm and prejudice." *Dorsey v. State,* 276 Md. 638, 653, 350 A.2d 665, 674–75 (1976). It was error in this case to admit in evidence Watson's prior conviction for second-degree rape. The remaining question is whether this error was harmless. We hold that it was not.

In *Dorsey*, we adopted the "harmless error rule" enunciated by the Supreme Court in *Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We held that

> "[U]nless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated."

*Dorsey*, 276 Md. at 659, 350 A.2d at 678; *Smallwood v. State*, 320 Md. 300, 308, 577 A.2d 356, 359–60 (1990).

In *Ross v. State*, 276 Md. 664, 350 A.2d 680 (1976), we found that, in a prosecution for possession with intent to distribute heroin, it was reversible error to admit evidence that defendant had previously sold narcotics. We stated, it is a

> "fundamental proposition that an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes, .... Evidence of other crimes may tend to confuse the jurors or prejudice their minds against the accused and to predispose them to a belief in his guilt."

*Id.* at 669, 350 A.2d at 684. We cautioned that "introduction of evidence which shows other offenses by the accused should be subjected to rigid scrutiny by the courts because of the great potential for danger which characterizes it." *Id.* at 671, 350 A.2d at 685.

We reject the State's argument that the limiting instruction given by the trial judge rendered the admission of Watson's conviction harmless. The limiting instruction, that the prior conviction evidence should be used solely for the purpose of evaluating the character witnesses' knowledge of the defendant, is intended to mitigate the prejudice to a defendant of exposing the jury to evidence of prior crimes where they are appropriately admitted. *See* 5 McLain, *Maryland Evidence* § 105.1 at 80–81. In this case, the prior conviction should never have come before the jury.

The State also argues that the error was harmless because the character witnesses' opinions remained unchanged in view of their knowledge of the conviction. Prior convictions may be used to test the basis of a character witness' opinion not only to show that the witness did not have sufficient knowledge of the defendant but also, as the State argued to the trial court in seeking admission of the conviction, to show that the witness is not worthy of belief. It is possible that the jury may have discounted the credibility of the character witnesses *because* their opinions remained unchanged in the face of the "second-degree rape" conviction.

Watson's prior conviction of second-degree rape was irrelevant to his character witnesses' opinions of his character for peacefulness and non-violence. Under the test set forth by this Court in *Dorsey*, we are unable, upon our independent review of the record in this case, to declare, beyond a reasonable doubt, that improper admission of this conviction at trial in no way influenced the verdict. The error is not harmless.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY HARFORD COUNTY.