591 A.2d 875

**Brian Richard JORDAN**

v.

**STATE of Maryland.**

**No. 53, Sept. Term, 1990.**

Court of Appeals of Maryland.

June 28, 1991.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued Before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

CHASANOW, Judge.

Brian Richard Jordan (Jordan) was convicted in the Circuit Court for Carroll County of felony murder, conspiracy to commit murder, conspiracy to commit robbery, and robbery. Jordan received two life sentences and two ten-year

sentences for the respective offenses, all sentences to run consecutively.[1]

The events that culminated in Jordan's arrest and trial are as follows: Jordan and two other companions, Brian Matthew Tracy (Tracy) and Dawn Torres (Torres), with an ultimate goal of running away to California, plotted an escape from the Sykesville Shelter Home, a juvenile facility where they were being detained. On November 22, 1987, they discussed a plan whereby Tracy and Jordan would kill Richard Purman (Purman) and steal his car. Later that day, Tracy called Purman and asked him to drive to the shelter and pick up Tracy, Torres and Jordan. Purman complied. Tracy instructed Purman to drive to Tracy's house, where Tracy obtained a gun. Next, Tracy directed Purman to a wooded area at Mail and Sam's Creek Roads and told Purman that he had a surprise for him. Upon their arrival and after unloading the personal belongings of the runaways into a weeded area, Tracy shot Purman to death.[2] The rest of the escape scheme did not go as planned, and the three ultimately returned to the Sykesville Shelter.

On November 23, 1987, at approximately 3 a.m., Jordan, age 16, and Tracy were arrested at the Sykesville Shelter Home. Jordan was handcuffed, *Miranda*[3] warnings were read to him, and he then was placed under arrest. During this time, Jordan complained to the officers that the handcuffs were too tight, but no corrective measures were taken. Jordan was transported to the Westminster Barracks of the Maryland State Police. Although the tempera-

---

1. In *Jordan v. State,* 82 Md.App 225, 571 A.2d 238 (1990), the State conceded that Appellant's conviction for robbery merged with his conviction for felony murder.

2. The original plan had been for Jordan to stab Purman with a knife but, when the time came to perform the deed, Jordan apparently could not unsheathe the knife from his sleeve.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ture was 23 degrees outside and there was ice and snow on the ground, Jordan was taken wearing only a tee shirt and jeans, with no shoes or socks on his feet. *Miranda* warnings were read again to Jordan by Corporal James Leete. Before making a statement about the events and circumstances surrounding Richard Purman's death, Jordan asked whether he could have a lawyer but was told that none was presently available. He also was not permitted to contact his mother. Jordan subsequently made a 95 minute incriminatory statement.

A hearing was held prior to trial on a motion to suppress Jordan's statement. Jordan claimed that his statement was involuntarily made and that he did not waive his right to counsel. Several factors were asserted as to why the trial judge should find Jordan's prior statement involuntary: 1) Jordan was a juvenile being detained in a juvenile facility; 2) he complained of discomfort from the handcuffs being too tight, but was only given instructions on how to attempt to alleviate the pressure on his wrists; 3) he was inadequately dressed for the inclement weather conditions, i.e., "shoeless, sockless, hatless, and jacketless," when transported to the Maryland State Police Barracks; and 4) he was forced to walk barefoot over an icy gravel parking lot to the barracks. The trial court held that Jordan had been properly advised of his rights and that his statement was voluntarily made, but that the State had not proven by a preponderance of the evidence that Jordan had knowingly and intelligently waived his right to counsel. Therefore, when and if Jordan took the stand, his statement could only be used for the purpose of impeachment.

At trial, after the State had concluded its case, Jordan's counsel requested that the trial court reconsider its ruling on the voluntariness of Jordan's statement and proffered that the defendant would take the stand if his prior statement could not be used for impeachment purposes. The trial court declined to reconsider its ruling on the motion to suppress. Jordan elected not to testify and, after being convicted, appealed to the Court of Special Appeals. He maintained that his statement was not voluntarily given

because of the conditions and circumstances that he was exposed to immediately prior to interrogation, as well as his young age at the time of arrest and his detainers' refusal to allow him to speak with his mother either at the shelter or police barracks. The State argued that the issue had not been preserved for appeal since Jordan did not testify and, therefore, the statement was never utilized or placed into evidence. The Court of Special Appeals decided that the issue was not preserved for appellate review.

"The [trial] court ruled that the State's failure to prove compliance with *Miranda* rendered [Jordan's] statement inadmissible in the State's case in chief. On the other hand, its ruling that the statement was voluntarily made allowed the State to use it to challenge [Jordan's] credibility should he testify in his own behalf. *See Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). [Jordan], as we have seen, elected not to testify; hence, the statement was never used in the case for any purpose. Therefore, the issue simply has not been properly presented for our review. *See Offutt v. State*, 44 Md.App. 670, 410 A.2d 611 (1980), *cert. denied*, 291 Md. 780 (1981). *See also Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)." (Footnote omitted.) *Jordan v. State*, 82 Md.App. 225, 231, 571 A.2d 238, 241 (1990).

## I. DECISION TO ADMIT JORDAN'S CONFESSION NOT PRESERVED

This Court must decide whether a trial court's ruling that the defendant's prior statement was voluntary is preserved for appeal if the defendant fails to testify on his own behalf and proffers to the court that, but for its ruling, he would have exercised his right to testify.

The fundamental constitutional right of a criminal defendant to testify in his own defense is deeply entrenched in our modern system of jurisprudence. *Rock v. Arkansas*, 483 U.S. 44, 49–50, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37, 44–45 (1987). "It is one of the rights that 'are essential to due process of law in a fair adversary process.' " *Id.* at 51,

107 S.Ct. at 2708–09, 97 L.Ed.2d at 46 (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562, 572 n. 15 (1975)). Allowing a defendant to testify promotes both the " ' "detection of guilt" ' " and the " ' "protection of innocence." ' " *Rock*, 483 U.S. at 50, 107 S.Ct. at 2708, 97 L.Ed.2d at 45 (quoting *Ferguson v. Georgia*, 365 U.S. 570, 581, 81 S.Ct. 756, 762, 5 L.Ed.2d 783, 790 (1961), in turn quoting 1 Am.L.Rev. 396 (1867)).

 It is axiomatic that courts have traditionally reviewed decisions that permit the admission of evidence in criminal trials only where the evidence is *used* to convict. We are not inclined to review a trial court's decision authorizing the State to use particular evidence when, as a result of a tactical decision by the defendant, the State ultimately was precluded from utilizing that same evidence.

Jordan's alleged injury is rather remote and speculative. If Jordan had testified, it is possible, depending on how he testified, that the State might have elected not to use his statement to impeach him and thus not open the door to the issue of voluntariness. It is also possible that Jordan might have taken the stand and given testimony consistent with his statement to the police, thus precluding use of the statement since it would have no "impeachment" value; or Jordan might have taken the stand and given testimony so similar to his statement to the police that use of the statement to impeach, even if improper, would be harmless error.[4]

Just as Jordan's potential injury is speculative, the right he is asserting is also speculative. If we assume Jordan is

---

4. The Supreme Court made it clear in *Arizona v. Fulminante*, 499 U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that there are certain circumstances where the admission of an involuntary confession into evidence may be harmless error. The majority stated: "It is evident from a comparison of the constitutional violations which we have held subject to harmless error, and those which we have held not, that involuntary statements or confessions belong in the former category." *Id.* at ——, 111 S.Ct. at 1265, 113 L.Ed.2d at 332. Logic dictates that an involuntary confession, arguably incorrectly designated admissible for impeachment purposes, which was never admitted into evidence

correct and the trial judge erroneously ruled that the confession was voluntary, then it is not clear how Jordan's constitutional rights were violated. His right against self-incrimination was not infringed upon, as he elected not to testify. His right to take the witness stand could ultimately be preserved since, if he testified and was improperly impeached with an involuntary statement, any conviction would be reversed on appeal. What Jordan really seems to be asking for is that, when a trial judge improperly rules that an involuntary confession can be used to impeach, the defendant ought to be able to avoid the effect of the ruling by not taking the stand, but still have his conviction reversed because evidence that ultimately was *never* introduced should not even have been *available* for introduction.

In *New Jersey v. Portash*, 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979), the Supreme Court held that impeachment by prior statements made to a grand jury under a grant of immunity would violate a defendant's Fifth Amendment rights. The *Portash* trial judge had ruled *in limine* that the defendant could be impeached with the grand jury testimony, and as a result, the defendant elected not to testify. The Supreme Court held that it could review the trial court's ruling since the New Jersey appellate court had considered the suppression ruling properly before it and federal law did not prohibit New Jersey from following this procedure.

In a concurring opinion joined by Justice (now Chief Justice) Rehnquist, Justice Powell acknowledged that since this was a state case, the procedural question was within the authority of the state to decide. He said, "requiring that the claim [that the confession could not be used to

should be "held subject to harmless error." The fact that the defendant made a tactical decision to refrain from testifying based on such factors as the preliminary ruling and the probable inconsistency between the confession and the anticipated testimony does not alter the actuality that any error ascribed to the preliminary ruling was harmless.

impeach] be presented only by those who have taken the stand will prevent defendants with no real intention of testifying from creating artificial constitutional challenges to their convictions." *Id.* at 462, 99 S.Ct. at 1299, 59 L.Ed.2d at 512 (Powell, J., concurring).

In a dissent joined by Chief Justice Burger, Justice Blackmun stated that since the defendant did not take the stand, the court should not have reached the issue of whether the grand jury testimony could have been used to impeach. He wrote that the result of the court's ruling was to render "an advisory opinion, informing respondent what the State would have been permitted to do or not do had respondent ever taken the stand." *Id.* at 468, 99 S.Ct. at 1301, 59 L.Ed.2d at 515 (Blackmun, J., dissenting).

Five years later, the Supreme Court decided *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), where the defendant made a motion *in limine* to exclude the use of a prior conviction to impeach if he elected to testify. The trial judge ruled that the conviction would be admissible to impeach. As a result, the defendant elected not to testify. The Supreme Court held that in order to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify at trial and be impeached. In order to properly weigh probative value against prejudicial effect, a reviewing court "must know the precise nature of the defendant's testimony, which is unknowable when ... the defendant does not testify." *Id.* at 41, 105 S.Ct. at 463, 83 L.Ed.2d at 447. The Court noted that "[a]ny possible harm flowing" from the court's ruling would be "wholly speculative" in the absence of the defendant's testimony. *Id.*

> "When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction."

*Id.* at 42, 105 S.Ct. at 463, 83 L.Ed.2d at 448. Although *Luce* involved the issue of impeachment by prior conviction rather than a ruling grounded on the constitutional right not to be impeached with an involuntary confession, we are persuaded that its reasoning is applicable in the instant case.

Finally, Jordan contends that his right to appellate review is governed by Maryland Rule 4–252(g)(2), which states in pertinent part:

> "If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, on the motion of a party and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise. *A pretrial ruling denying the motion to suppress is reviewable on a motion for new trial or on appeal of a conviction."* (Emphasis added.)

Apparently his argument is that where a judge improperly denies a pretrial motion to suppress evidence, that ruling is reviewable and the defendant is entitled to a new trial, even if the State decides not to offer the disputed evidence at trial. Rule 4–252(g)(2) obviously was not intended to authorize appellate review of a judge's preliminary ruling that permits the State to introduce evidence at trial unless the evidence is ultimately introduced at trial. *See also State v. Conner,* 163 Ariz. 97, 786 P.2d 948, 954 (1990) ("Because defendant did not testify, we hold that he may not attack the pretrial ruling conditionally admitting his statements for impeachment in the event he did testify"); *State v. Bruneau,* 131 N.H. 104, 552 A.2d 585, 592 (1988) ("Only if the defendant had taken the stand and suffered impeachment by the statement's use would an issue be ripe for adjudication [on appeal]").

## II. SEPARATE SENTENCES FOR CONSPIRACY TO COMMIT MURDER AND CONSPIRACY TO COMMIT ROBBERY WITH A DEADLY WEAPON

Jordan asserts that the conspiracy was only one crime and thus he should have received only one sentence

for one conspiracy conviction. He claims that the Court of Special Appeals erred in holding that this question had not been preserved for appellate review. The intermediate appellate court stated:

"[Jordan] further contends that the State proved only one conspiracy with multiple objects and, consequently, he should only have been sentenced for one conspiracy. This argument is belied by what occurred below. [Jordan] did not object to two conspiracy counts being submitted to the jury, and the issue was not raised when he moved for judgment of acquittal. Moreover, [Jordan] did not except to the conspiracy instructions given the jury. Even when the jury had returned verdicts of guilty as to each of two conspiracies, [Jordan] still did not bring to the court's attention the contention he now makes that there was only one conspiracy. Notwithstanding, [Jordan] suggests that we treat the court's failure to present the issue of the number of conspiracies properly to be considered by the jury plain error. We are not persuaded that it is plain error."

*Jordan,* 82 Md.App. at 245–46, 571 A.2d at 248 (footnote omitted). The State maintains that defense counsel acquiesced in the separate conspiracy convictions and, therefore, the issue has not been preserved for appellate review. The State asserts that Jordan cannot now raise this argument

"because he (1) did not object to two conspiracy counts being submitted to the jury, (2) did not except to the conspiracy instructions actually given to the jury, and (3) even after the jury found him guilty of two conspiracies, did not make the contention he now makes on appeal with respect to [this] issue."

While the State urges this Court to hold that Jordan was properly convicted of two separate conspiracies, it concedes that if there was only one conspiracy and if the issue had been preserved for review, then under *Tracy v. State,* 319 Md. 452, 573 A.2d 38 (1990) (the trial of Jordan's co-conspir-

ator, Brian Matthew Tracy), only one conspiracy conviction would be upheld. In *Tracy* we explained:

> "It is well settled in Maryland that only one sentence can be imposed for a single common law conspiracy no matter how many criminal acts the conspirators have agreed to commit. The unit of prosecution is the agreement or combination rather than each of its criminal objectives. In *Mason v. State*, 302 Md. 434, 445, 488 A.2d 955, 960 (1985), we stated that a 'conspiracy remains one offense regardless of how many repeated violations of the law may have been the object of the conspiracy.'"

*Id.* at 459, 573 A.2d at 41. The facts in the instant case do not support the determination that two conspiracies existed. The imposition upon Jordan of one sentence for conspiracy to commit murder and one sentence for conspiracy to commit robbery was plain error. An illegal sentence resulted.

If we conclude that sentencing Jordan for two conspiracies was unlawful, we must also conclude that Jordan has not waived his right to object to the unlawful sentence.

> "[W]hen the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court. Such review and correction of an illegal sentence is especially appropriate in light of the fact that Rule 4–345(a), formerly Rule 774 a, provides that '[t]he court may correct an illegal sentence at any time.' Thus, a defendant who fails to object to the imposition of an illegal sentence does not waive forever his right to challenge that sentence."

*Walczak v. State*, 302 Md. 422, 427, 488 A.2d 949, 951 (1985). *See also Osborne v. State*, 304 Md. 323, 326 n. 1, 499 A.2d 170, 171 n. 1 (1985).

As we stated in *Tracy*, "[t]he agreement from its inception was to commit robbery and murder, but there was only one conspiracy since both crimes were the objective of the same agreement." 319 Md. at 460, 573 A.2d at 41. Jordan can only be sentenced once for the conspiracy that was the product of the agreement and, therefore, the conviction for

conspiracy to commit robbery will be vacated. Under Maryland Code (1957, 1987 Repl.Vol.) Article 27, § 38, "[t]he punishment of every person convicted of the crime of conspiracy shall not exceed the maximum punishment provided for the offense he or she conspired to commit." Through the single agreement, Tracy and Jordan conspired to commit murder and robbery. Of the two, murder is the crime that carries the more severe penalty and consequently is the guideline offense under section 38 that Jordan "conspired to commit." As in *Tracy*, the conviction for conspiracy to commit robbery must be vacated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART, AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF CONVICTION ON CONSPIRACY TO COMMIT ROBBERY, AND TO AFFIRM THE JUDGMENT OF CONVICTION ON THE REMAINING COUNTS. COSTS TO BE DIVIDED EQUALLY.

ELDRIDGE, Judge, dissenting:

The majority holds that the trial court's prejudicial ruling on Brian Jordan's pretrial motion under Maryland Rule 4–252 to suppress his confession is not reviewable because Jordan did not testify at his trial.[1] In reaching its conclu-

---

1. Maryland Rule 4–252 states as follows:

 "(a) **Mandatory Motions.**—In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:

 \*　　\*　　\*　　\*　　\*　　\*

 (4) An unlawfully obtained admission, statement, or confession;

 \*　　\*　　\*　　\*　　\*　　\*

 "(f) **Determination.**—Motions filed pursuant to this Rule shall be determined before trial and, to the extent practicable, before the day of trial, except that the court may defer until after trial its determination of a motion to dismiss for failure to obtain a speedy trial. If factual issues are involved in determining the motion, the court shall state its findings on the record.

sion, the majority relies on the United States Supreme Court's opinion in *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *Luce,* however, is totally distinguishable from the case at bar. Even if it were not distinguishable, its reasoning is unsound. Nonetheless the majority, apparently enamored with federal jurisprudence, largely ignores Maryland law and particularly Maryland Rule 4–252 in deciding this case.

## I.

The defendant Jordan filed a pretrial motion in accordance with Rule 4–252 in an effort to suppress the confession he made while in police custody. The trial judge held a suppression hearing as required by subsection (f) of the Rule and made a number of factual findings regarding Jordan's statement. The relevant facts disclosed by the evidence at the suppression hearing are as follows. At approximately 4:00 a.m. on November 23, 1987, Maryland State Police Officers went to the Sykesville Shelter Care Home in response to a call concerning a possible homicide. Brian Jordan was awakened, handcuffed, taken into the living room of the home, and placed on a couch while another police officer searched for the body of the victim. While handcuffed at the home, Jordan complained that the handcuffs were too tight. The officers detaining him sug-

---

"**(g) Effect of Determination of Certain Motions.—**

(1) *Defect in Prosecution or Charging Document.*—If the court grants a motion based on a defect in the institution of the prosecution or in the charging document, it may order that the defendant be held in custody or that the conditions of pretrial release continue for a specified time, not to exceed ten days, pending the filing of a new charging document.

(2) *Suppression of Evidence.*—If the court grants a motion to suppress evidence, the evidence shall not be offered by the State at trial, except that suppressed evidence may be used in accordance with law for impeachment purposes. If the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, on the motion of a party and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise. A pretrial ruling denying the motion to suppress is reviewable on a motion for a new trial or on appeal of a conviction."

gested ways in which he could alleviate the pressure, but they never did anything themselves to loosen the cuffs. At about 6:12 a.m., over two hours after Jordan was hauled out of bed, the officers holding him were told that the body of the victim had been found. Jordan was then read his rights in accordance with *Miranda*, and was transported to the Maryland State Police barracks.[2]

Although it was 23 degrees outside, Jordan was transported in his bare feet and without a coat, dressed only in a tee shirt and blue jeans. Apparently his shoes and jacket were taken as evidence of the crime; there was evidence, however, that a blanket and a pair of boots were available but not provided to him. He was transported in a car which had been sitting idle in subfreezing temperatures without any heat on for more than two hours. At the barracks, Jordan was forced to walk barefoot across a gravel parking lot where there was ice and snow.

Once inside the barracks, Jordan was immediately taken to Corporal Leete who was assigned to interrogate the defendant. Jordan was handcuffed at that point, although it is unclear from the trial judge's factual findings whether or not Jordan was cuffed to a chair while being interrogated.

Jordan was then read his *Miranda* rights for the second time. Jordan testified that he asked: "Can I have a lawyer?" He was told that "[y]ou can't have one now because of the time." Leete testified that Jordan, in an off-hand manner, asked: "Is there a lawyer here?" Leete stated that he told Jordan that "[w]e have no lawyer available here." The trial judge found that "there was definitely a discussion about an attorney and having an attorney present" and that "[w]hen the inquiry started about, '[i]s there a lawyer here?' I think that the interrogator's silence—or statement and following silence was deceptive."

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After the discussion regarding a lawyer, Leete continued to talk with Jordan about his willingness to give a statement. A tape recorder was turned on, and Leete once again read Jordan his rights. As the trial court described it, "there was almost an imperceptible amount of time from when Jordan was asked, '[d]o you understand your rights?' ... until the question is asked, '[y]our name....'" Jordan subsequently gave an incriminating statement on tape.

After reviewing the above-mentioned facts at the suppression hearing, the judge found the following. Jordan was sixteen years old, had completed the tenth grade with a marginal academic record, had flunked three courses, and was of average intelligence. Jordan had no prior experience with *Miranda* rights.[3] The conditions of his incarceration "were deplorable and unexplainable," but, after being turned over to Corporal Leete at the Maryland State Police Barracks, his treatment was "fair". The police made no effort to contact Jordan's family.

After making findings of fact, the trial judge concluded that Jordan's confession was made in violation of his right to counsel. *Miranda v. Arizona,* 384 U.S. 436, 444–445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706–707 (1966) ("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.... If ... he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning"). *See Edwards v. Arizona,* 451 U.S. 477, 484–485, 101 S.Ct.

---

**3.** Jordan was in the Sykesville Shelter Care Home because three weeks prior to his arrest in the present case he was arrested for theft and the destruction of property. Nevertheless, the trial judge found that his arrest was non-custodial and that he was never read his rights. His mother, with regard to that arrest, was contacted and secured representation for him.

1880, 1885, 68 L.Ed.2d 378, 386 (1981); *Radovsky v. State*, 296 Md. 386, 464 A.2d 239 (1983).

Upon determining that Jordan was interrogated in violation of *Miranda*, the trial judge indicated that he was concluding the suppression hearing. He only reached the issue of the voluntariness of Jordan's confession after being asked by defense counsel to make a finding of fact that the statement was involuntary. The court replied: "I think the statement was voluntarily given, but I don't think that there was a knowing and intelligent waiver of the right to counsel made, and that is what the Court is basing its ruling on. When the inquiry started about, 'Is there a lawyer here?', I think that the interrogator's silence—or statement and following silence was deceptive." Jordan's statement could therefore be used at trial to impeach his testimony if he were to take the stand. *See Harris v. New York*, 401 U.S. 222, 225–226, 91 S.Ct. 643, 645–646, 28 L.Ed.2d 1, 4–5 (1971). Although the trial judge made a number of factual findings, as previously set forth, it appears that those findings were made regarding the issue of whether or not Jordan waived his rights under *Miranda* and *Edwards v. Arizona, supra,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. There was no explanation given for the court's conclusion that Jordan's statement was voluntary.

At trial, after the close of the State's case, defense counsel renewed the motion to have Jordan's confession excluded for any purpose. Counsel informed the trial judge that Jordan would testify in his own defense but for the court's ruling at the pretrial hearing that his confession could be used by the State for impeachment purposes. The judge declined to reconsider his ruling. Jordan did not testify.

## II.

The majority, relying on *Luce v. United States, supra,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443, refuses to review

the trial judge's voluntariness ruling on Jordan's pretrial motion to suppress because Jordan did not take the stand at trial knowing that his confession could be used to impeach him.

*Luce*, however, is entirely different from the case before us. *Luce* concerned the reviewability of a ruling on a motion *in limine* on the admissibility of a prior conviction for the purposes of impeachment under Rule 609(a) of the Federal Rules of Evidence. The case before us concerns a trial court's ruling on a defendant's pretrial motion under Maryland Rule 4–252 to suppress a confession. *See State v. Brings Plenty*, 459 N.W.2d 390, 394–395 (S.D.1990) (*Luce* does not apply where the defendant, on appeal, challenges a pretrial ruling allowing his confession to be admitted at trial for the purpose of impeaching the defendant). A ruling on a motion *in limine* is preliminary and can be modified by the court during trial as necessary. The denial of a motion to suppress under Rule 4–252, however, is binding on the trial court unless it grants a supplemental hearing or hearing de novo.

Moreover, whereas the issue addressed in *Luce* arises frequently, the issue presented in this case does not. The issue before us surfaces only in those cases where the trial judge, in a pretrial ruling, precludes use of the defendant's confession in the State's case-in-chief on the grounds that it violated *Miranda*, but allows it to be used for impeachment purposes because it is deemed voluntary.[4]

In addition, whereas *Luce* concerned a non-constitutional evidentiary issue, this case concerns a constitutional claim. The majority in *Luce* specifically distinguished the case before it from "Fifth Amendment challenges to state-court rulings that operated to dissuade defendants from testifying" or any question "reaching constitutional dimensions." 469 U.S. at 42–43, 105 S.Ct. at 464, 83 L.Ed.2d 443, 448.

---

4. *Harris v. New York*, 401 U.S. 222, 225–226, 91 S.Ct. 643, 645–646, 28 L.Ed.2d 1, 4–5 (1971); *Lodowski v. State*, 307 Md. 233, 254–255, 513 A.2d 299, 310–311 (1986) (Lodowski II).

*See Passamichali v. State,* 81 Md.App. 731, 739–741, 569 A.2d 733, 737–738, *cert. denied,* 319 Md. 484, 573 A.2d 808 (1990) (constitutional issue of admissibility of the defendant's prior conviction under Code (1984 Repl.Vol.), § 10–905 of the Courts and Judicial Proceedings Article, preserved for appeal even though the defendant did not testify at trial); *State v. Brings Plenty, supra,* 459 N.W.2d at 394–395 (although the defendant did not testify at trial, the court's pretrial ruling admitting the defendant's confession for purpose of impeachment is reviewable where the defendant's Fifth Amendment rights were at issue); *State v. Brunelle,* 148 Vt. 347, 348, 356, 534 A.2d 198, 199–200, 204–205 (1987) (judge's ruling admitting the defendant's blood-alcohol-content test results for purposes of impeachment, where the blood sample was taken in violation of *Miranda,* was reviewable although the defendant did not testify at trial, as the defendant's constitutional right to testify in his own defense was implicated). *See also, Apodaca v. People,* 712 P.2d 467 (Colo.1985) (issue of the admissibility of the defendant's prior conviction was preserved for appeal even though the defendant did not testify, where the defendant raised the question of the constitutionality of the prior conviction).

Most importantly, the present case does not concern Rule 609 of the Federal Rules of Evidence; it involves Maryland Rule 4–252. Subsection (f) of Rule 4–252 states that "[m]otions filed pursuant to this Rule shall be determined before trial" and "[i]f factual issues are involved in determining the motion, the court shall state its findings on the record." Subsection (g)(2) of the Rule states that "[i]f the court denies a motion to suppress evidence, the ruling is binding at the trial unless the court, on the motion of a party and in the exercise of its discretion, grants a supplemental hearing or a hearing de novo and rules otherwise. *A pretrial ruling denying the motion to suppress is reviewable* on a motion for a new trial or *on appeal of a conviction.*" (Emphasis added). The case before us falls squarely within the Rule. Jordan's motion to suppress was

determined before trial. The judge's ruling that Jordan's statement was voluntary was binding on the court. The ruling was harmful to Jordan, as it resulted in his not testifying in his own behalf. Under the language of the Rule, the judge's pretrial ruling denying Jordan's motion to suppress his confession is reviewable on appeal.

Nowhere in Rule 4-252 is there a requirement that, for a prejudicial ruling on the voluntariness of a confession to be reviewable on appeal, the confession must actually be admitted at trial. On the contrary, the language of the Rule plainly states that the trial judge's "pretrial ruling denying the motion to suppress is reviewable ... on appeal of a conviction." While any trial court ruling is subject to the "harmless error" rule on appeal, the ruling on the voluntariness of the confession in this case did prejudice the defendant even though the confession was not admitted at trial. The majority utterly fails to provide an explanation for its ignoring the language of Rule 4-252 and reading into the Rule a requirement that the confession be actually admitted at trial in order for the ruling to be reviewable on appeal.[5] I note that the majority, as support for its interpretation of Rule 4-252, cites two cases, one from Arizona and one from New Hampshire. In neither case is there any indication that a rule or statutory provision similar to Rule 4-252 was involved.

The majority's decision today undermines Rule 4-252. One of the purposes of the Rule is to create a record on the contested evidentiary issue so that it can be reviewed by an appellate court. *Logue v. State*, 282 Md. 625, 627, 386 A.2d 780, 782 (1978). *See Brittingham v. State*, 306 Md. 654, 660-661, 511 A.2d 45, 48 (1986). *See also Mace Produce v.*

---

**5.** We have emphasized in a multitude of cases that the rules of procedure are not mere "guides" but are "precise rubrics" to be strictly followed. *See, e.g., State v. Cook*, 322 Md. 93, 103-104, 585 A.2d 833, 838 (1991); *Parren v. State*, 309 Md. 260, 280, 523 A.2d 597, 606 (1987); *State v. Ricketts*, 290 Md. 287, 292, 429 A.2d 1025, 1027-1028 (1981); *Countess v. State*, 286 Md. 444, 463, 408 A.2d 1302, 1311 (1979); *State v. Bryan*, 284 Md. 152, 155, 395 A.2d 475, 477 (1978).

*State's Attorney,* 251 Md. 503, 509–511, 248 A.2d 346, 350–351 (1968); *Farrow v. State,* 233 Md. 526, 532–533, 197 A.2d 434, 437–438 (1964). Where a separate hearing is held and a record on the issue of admissibility of the confession is created, I see no reason to require the defendant to testify at trial. *See State v. Whitehead,* 104 N.J. 353, 359, 517 A.2d 373, 376 (1986); *Commonwealth v. Richardson,* 347 Pa.Super. 564, 570–571, 500 A.2d 1200, 1204 (1985), *appeal denied,* 525 Pa. 644, 581 A.2d 571 (Pa.1990).

Another obvious purpose of Rule 4–252 is to have decisions regarding the admissibility of specified types of evidence settled before trial so that both the State and the defendant can make intelligent tactical decisions regarding trial, such as whether or not the defendant should testify. *See Dorsey v. State,* 276 Md. 638, 657–658, 350 A.2d 665, 677 (1976) ("The abnegation of a particular rule upon which the defense intended to rely may often inflict more damage than initially apparent; a meritorious line of defense may be abandoned as a result; an important witness may not be called; strategies are often forsaken. The future course of the trial inevitably must be changed to accommodate the rulings made."); *State v. Whitehead, supra,* 104 N.J. at 358–360, 517 A.2d at 376–377. *See also Apodaca v. People, supra,* 712 P.2d at 473; *People v. Finley,* 431 Mich. 506, 538, 431 N.W.2d 19, 32 (1988) (Cavanagh, J., concurring in part and dissenting in part); *State v. Jones,* 271 N.W.2d 534, 536–537 (Minn.1978); *State v. Brunelle, supra,* 148 Vt. at 353, 534 A.2d at 202 (1987). The majority would have the defendant, where the trial judge in a pretrial ruling deems a confession to be voluntary and therefore admissible for the purposes of impeachment, ignore the judge's ruling and commit himself to the unwise trial strategy of testifying just to preserve the issue for review.

Not only is the majority's decision contrary to Rule 4–252, but it impermissibly burdens the accused's fundamental right to decide whether or not to testify. *See Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358, 363–364 (1972) (statute requiring a defendant

in a criminal case to testify first was unconstitutional; the Court stated that "[w]hether the defendant is to testify is an important tactical decision as well as a matter of constitutional right," and the issue is reviewable even though the defendant elected not to testify); *Apodaca v. People, supra*, 712 P.2d 467; *State v. Lamb*, 84 N.C.App. 569, 583, 353 S.E.2d 857, 865 (1987), *aff'd*, 321 N.C. 633, 365 S.E.2d 600 (1988) ("If the threatened use of inadmissible evidence can prevent the defendant from testifying altogether and also deny her the opportunity to appeal an erroneous ruling on the admissibility of the evidence, the State would have multiple illegitimate opportunities to silence defendants, and the very purpose of the motion *in limine* would be lost"); *State v. Brings Plenty, supra*, 459 N.W.2d at 394–395; *State v. Brunelle, supra*, 148 Vt. at 353–356, 534 A.2d at 202–205. As pointed out by Judge Bishop of the Court of Special Appeals, "[i]t defies logic to suggest that a defendant must testify in order to preserve for appellate review a claim of deprivation of the constitutional right to testify." *Passamichali v. State, supra*, 81 Md.App. at 740, 569 A.2d at 738.

### III.

Even if *Luce* were not distinguishable from the case before us, I would decline to follow it as its reasoning is unsound. *See e.g., Commonwealth v. Cordeiro*, 401 Mass. 843, 854, 519 N.E.2d 1328, 1335 (1988); *People v. Moore*, 156 A.D.2d 394, 395, 548 N.Y.S.2d 344, 346 (1989); *State v. Whitehead, supra*, 104 N.J. at 357–359, 517 A.2d at 375–376; *State v. McClure*, 298 Or. 336, 342 n. 4, 692 P.2d 579, 584 n. 4 (1984); *Commonwealth v. Jackson*, 385 Pa.Super. 401, 408, 561 A.2d 335, 338 (1989), *aff'd*, 526 Pa. 294, 585 A.2d 1001 (Pa.1991); *Commonwealth v. Richardson, supra*, 347 Pa.Super. 564, 500 A.2d 1200. *See also Apodaca v. People, supra*, 712 P.2d 467; *State v. Ford*, 381 N.W.2d 30, 32 n. 1 (Minn.Ct.App.1986); *State v. Brings Plenty, supra*, 459 N.W.2d at 394–395; *State v. Brunelle, supra*, 148 Vt. at 356, 534 A.2d at 204–205.

The Supreme Court's primary contention in *Luce* was that any harm to a defendant who elects not to testify at his trial, based on a trial court's ruling regarding the admissibility of evidence, would be "speculative." The Court in *Luce* stated that "a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." 469 U.S. at 42, 105 S.Ct. at 463, 83 L.Ed.2d 443, 448. I believe that it is entirely reasonable to presume that when a defendant seeks an advance ruling in order to suppress a prior incriminating statement or other adverse evidence, he would have testified had his motion been granted. *See State v. Whitehead, supra,* 104 N.J. at 360–361, 517 A.2d at 377; *Commonwealth v. Richardson, supra,* 347 Pa.Super. at 570–571, 500 A.2d at 1204; *People v. Finley, supra,* 431 Mich. at 541, 431 N.W.2d at 33–34 (Cavanagh, J., concurring in part and dissenting in part). This is particularly so where, as in the case before us, defense counsel represents to the court that the defendant's decision whether or not to testify is solely dependent on the trial court's pretrial ruling regarding the admissibility of defendant's confession.

The Supreme Court also stated in *Luce* that if the defendant does not testify there is no way of knowing whether or not the prosecutor would have used the evidence to impeach the defendant. This conclusion is highly dubious. If the prosecutor before trial is opposed to the suppression of evidence favorable to the State, it is reasonable to assume that he plans to use the evidence at trial against the defendant. *People v. Finley, supra,* 431 Mich. at 540–541, 431 N.W.2d at 33 (Cavanagh, J., concurring in part and dissenting in part). *See State v. Lamb,* 321 N.C. 633, 648, 365 S.E.2d 600, 608 (1988).

Finally, the *Luce* Court reasoned that unless the reviewing court knows the precise nature of the defendant's testimony, it would be unable to weigh the probative value of the contested evidence against its prejudicial effect. Without the defendant's testimony, therefore, the reviewing court could not determine if the use of the evidence resulted in "harmless error." This reasoning is highly suspect,

particularly in light of Maryland law that, in order for the erroneous admission of evidence to be deemed harmless error, the State must prove beyond a reasonable doubt that the improperly admitted evidence did not contribute to the defendant's conviction. *State v. Watson,* 321 Md. 47, 58, 580 A.2d 1067, 1072 (1990); *Dorsey v. State, supra,* 276 Md. at 657, 350 A.2d at 677. This standard applies whether or not the contested evidentiary issue is of constitutional significance. *Dorsey, supra,* 276 Md. at 657–659, 350 A.2d at 677–678. *See Watson, supra,* 321 Md. 47, 580 A.2d 1067. Moreover, the case before us concerns the admissibility of a confession. Virtually the only situation where use of an involuntary confession at trial would be harmless error would be where there were multiple confessions and one was given voluntarily. *See Arizona v. Fulminante,* —— U.S. ——, ——, ——, 111 S.Ct. 1246, 1261, 1266, 113 L.Ed.2d 302, 327, 333 (1991); *Dorsey v. State, supra,* 276 Md. at 655, 350 A.2d at 676. This is not such a case; Jordan did not make multiple confessions.

Furthermore, I find the logic of applying harmless error analysis in cases such as the one before us to be skewed. The Supreme Court and the majority are precluding review of a criminal defendant's substantial claim that evidence was improperly deemed admissible, based on sheer speculation by the State that, had the improperly admitted evidence been used, the State could prove beyond a reasonable doubt that the evidence would not make a difference on the determination of the defendant's guilt. This is an improper use of harmless error analysis.

Finally, we do not need to speculate about the potential impact of *improperly* admitted evidence where a judge's pretrial ruling admitting it essentially prevented the defendant from exercising his constitutional right to take the stand in his own defense. Jordan was clearly prejudiced if the trial court's ruling admitting his confession were erroneous, in light of Jordan's practical inability to testify in the face of that ruling. The Supreme Court and the majority find it entirely acceptable to force a criminal defendant to

make the crucial tactical decision of whether or not to testify at trial based on *erroneous* trial court rulings. In my view, the defendant has a fundamental right to choose to testify based on *correct* evidentiary rulings. He should not be forced to testify in order to challenge those rulings that are flawed. *See State v. Whitehead, supra,* 104 N.J. at 358–362, 517 A.2d at 375–377; *People v. Finley, supra,* 431 Mich. at 535–536, 431 N.W.2d at 31 (Cavanagh, J., concurring in part and dissenting in part).

## IV.

Today the majority, relying on *Luce,* holds that in order for a ruling in a pretrial suppression hearing admitting defendant's confession for impeachment purposes to be reviewed, the defendant must testify at trial.[6] The case before us, however, is not governed by *Luce;* it falls directly within Maryland Rule 4–252 which states that "[a] pretrial ruling denying [Jordan's] motion to suppress is reviewable ... on appeal of a conviction."

---

**6.** Because the majority does not reach the issue of whether or not Jordan's confession was in fact voluntary, I need not express a view on the matter. As previously mentioned, however, the trial judge's factual findings at Jordan's suppression hearing seemed to relate to his conclusion that Jordan's right to counsel was violated as opposed to his conclusion that Jordan's statement was voluntary. Therefore, his factual findings as to the voluntariness of Jordan's statement may have been insufficient under *Lodowski II, supra,* 307 Md. at 255–258, 513 A.2d at 311–313.