**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 537

September Term, 2016

_____

HAROLD EUGENE WILLIAMS

v.

STATE OF MARYLAND

_____

Arthur,
Reed,
Zarnoch, Robert A.
    (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  March 30, 2017

Appellant Harold Eugene Williams had an altercation with his girlfriend, Angela Swan, after reading a series of text messages between her and other men. An Anne Arundel County jury convicted Williams of second-degree assault, but he was acquitted of first-degree assault, reckless endangerment, a number of weapons offenses, and posting revenge porn in violation of Md. Code (2002, 2012 Repl. Vol., 2016 Supp.), § 3-809 of the Criminal Law Article.

In Williams's timely appeal, he complains of the trial court's admission of his prior conviction for battery on cross-examination of his character witnesses and of the court's response to a jury question. Finding no error or abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

Williams and Swan were involved in an intimate relationship from 2012 to October of 2015. Although they did not live together, Swan had a key to Williams's house, often stayed overnight, and kept her belongings there. Swan testified that in the last few months of their relationship they had argued frequently.

On October 23, 2015, Swan stayed at Williams's house at his request. The next morning, while Swan was in the bathroom, wearing only a shirt, her cell phone started ringing.

Williams was near her phone at the time. He noticed a text message from a man whom Swan had denied knowing only days earlier. Williams read the man's text

---

[1] Because Williams was acquitted of most of the charges against him (including the most serious charges), we do not view the facts, as we normally would, in the light most favorable to the State. In recounting the factual background in this case, we largely recount the evidence that the jury heard, and not necessarily the facts that the jury found.

messages, along with messages from three other men. He saw that Swan had sent a nude photograph to someone. Williams grabbed Swan's cell phone and confronted her in the bathroom.

Swan claimed that Williams called her a "bitch," accused her of cheating on him, shoved her against the bathroom wall, threw her phone towards her, hit her upper body, pushed her to the floor, and kicked her while she was on the floor on her back, all the while demanding that she leave. According to Swan, she said that she would leave, and Williams backed away, but continued yelling at her. After a few moments, she went upstairs to gather her clothes and belongings. She claimed that Williams threw her pants down the stairs and held a gun to her head while he was using her phone to tell someone to come and get her before he killed her. She also claimed that he pushed her down the stairs as she begged him to let her leave. After Williams allegedly pushed her into a closet and took her purse, she claimed that she was able to escape, with a towel wrapped around herself, and with some of his possessions (which she said she intended to trade for hers). She said that she found her pants and some of her belongings outside of the house.

After the confrontation, Swan drove to a nearby convenience store to call 911. She told the operator that Williams had attacked her and held a gun to her head, but that she did not need medical attention.

A police officer arrived. He spoke to Swan, who was "visibly upset," "shaking," and "crying a lot." She told the officer that Williams had physically assaulted her, pulled a gun on her, and pushed her down the stairs. The officer requested emergency medical

services, but Swan refused treatment.[2]

The officer went to Williams's house and retrieved Swan's phone. After he returned it to her, Swan received a call on her cell phone from a friend. The friend told Swan to check her Facebook account because nude photographs of her had been posted on her Facebook page. The officer showed Swan how to delete the posting.

Testifying in his own defense, Williams denied punching or kicking Swan or threatening her with a gun. He claimed that after looking at the information in her phone and discovering evidence of her infidelity, including the nude picture that she had sent to another man, he had ordered her out of his house. He admitted that he had "tried to grab the towel" that she had around her waist and that he "tried to push her out the front door." Williams denied that he owned a gun.

Williams called Arkina Taylor, his former neighbor, as a character witness. Taylor said she had known Williams for ten years and that he was her "best friend." Taylor offered her opinion that Williams was a "hard-working fun-loving guy that just likes to have a good time." She testified that he had a reputation in the community as being a "[p]eaceful" person and that she had "never" seen him with a firearm or become violent.

When given the opportunity to cross-examine Taylor, the State asked to approach the bench, and the following colloquy occurred:

> [STATE]: . . . Now that she has said he's a peaceful person --

___

[2] On the day after the altercation, Swan did go to a hospital to seek treatment for a bruise on her leg, which she attributed to the assault.

- 3 -

[COURT]:  Uh-huh.

[STATE]:  -- the State is entitled to rebut that by asking her if she's aware that he has a prior conviction for battery.[3]

[COURT]:  Uh-huh.  I think you are, too.  Do you want to say anything about it?

[DEFENSE COUNSEL]:  I do.  I think that the State should not be allowed to do that.  If the State knew the specific facts of what that battery is, they --

[COURT]:  Well, why would that be, because I don't think the State is allowed to get into the facts; all they're allowed to do is ask that single question.  Remember, they're not allowed to say or ask for their --

[DEFENSE COUNSEL]:  I would think at this point, that they're referring to a conviction back in 1990 and I think it's certainly more prejudicial than probative and I don't think the State should be allowed --

[STATE]:  It is 1990, Your Honor.

[COURT]:  1990.  If she's known him for 10 years --

[STATE]:  But they're -- it's her best friend, so it's very relevant if she [sic] ever told him if she is aware of his prior convictions --

[COURT]:  Uh-huh.

[STATE]:  -- that he's a peaceful and non-violent man.  I mean it's completely relevant, Your Honor.

[THE COURT]:  Uh-huh.  I think it is, too.

[DEFENSE COUNSEL]:  And I would just argue that this is a

---

[3] The record contains a certified copy of a document from the District Court of Maryland for Prince George's County (District 5).  The document indicates that on April 25, 1990, Williams pleaded guilty to battery, which was a common-law offense at the time. *See Robinson v. State*, 353 Md. 683, 694 (1999).  Williams paid a $75.00 fine and court costs and was placed on probation for one year.

conviction that dates back 25 years.

[THE COURT]: Uh-huh.

[DEFENSE COUNSEL]: It dates a full 16 years prior to her knowing him.

[THE COURT]: Does that make any difference?

[DEFENSE COUNSEL]: I think it does. I think it's certainly more prejudicial than probative.

[COURT]: Well, here's the problem I'm having and maybe you can help me with this; there's a difference between admitting it (indiscernible - 10:52:04) and admitting it because it may not be a true fact, if he's always been a peaceful man, right?

[DEFENSE COUNSEL]: Uh-huh.

[THE COURT]: And I think the State is trying to get it in to show that he's not peaceful. And so there's no requirement that it did not date back to at least -- you know, even in 15 years.

[DEFENSE COUNSEL]: I think there is. I specifically asked whether or not, based upon her knowledge of him and the length of time that she knew him, that he was peaceful, and based upon that, her knowledge, and those ten years of his reputation in the community, I think unless the State has some other hinge of evidence that he's gotten a reputation, based upon that past prior for being not peaceful or being violent, it shouldn't be allowed.

\* \* \* \*

[STATE]: They opened the door. They put his peacefulness in evidence.

[THE COURT]: Uh-huh.

[STATE]: Whether -- and I'm not going to do this -- first off, I do it (indiscernible - 10:53:03) how well she knows him, because if she doesn't know about this, then she really doesn't know him that well, and if she does know about this, then he's not a peaceful -- his reputation is in question.

- 5 -

They've completely opened this door --

[COURT]: I think it comes in and the [State] will be entitled to say, knowing that, does that change your opinion of his peaceful character.

Over a defense objection, the State asked Taylor if she was aware of Williams's prior conviction for battery and, if she was not, whether this knowledge would cause her to change her opinion of him. She answered "no" to both questions.[4]

After the court had permitted the State to impeach Williams's first character witness with evidence of his 1990 conviction for battery, Williams called two more character witnesses: Dana Webb, a former girlfriend; and Kamran Jones, a coworker. They had known Williams for six and 15 years, respectively. They testified that Williams had a reputation for peacefulness and that they had never seen him with a firearm or become violent. On direct examination, Williams's attorney asked both of them whether they knew of Williams's 1990 battery conviction and, if they did not, whether it would change their opinion of him. Both said, "no." The State revisited that topic on cross-examination, and the witnesses reiterated their earlier answers.

At the end of the State's case-in-chief, the court granted a motion for judgment of acquittal on the charge of posting revenge porn. The State entered a nolle prosequi on the charge of use of a handgun in a felony.

The court submitted the remaining counts to the jury. The jury returned a verdict

---

[4] Before calling the character witness and eliciting her opinion, Williams did not move *in limine* for a ruling concerning whether the State could impeach her with the battery conviction. Nor did Williams request a cautionary instruction to the effect that the jury should consider the conviction only insofar as it bore on the witness's testimony about his character. *See generally Watson v. State*, 321 Md. 47, 58 (1990).

- 6 -

of guilty on the second-degree assault count and acquitted Williams of the four remaining counts. The court imposed a sentence of three years' imprisonment, with all but six months suspended, to be followed by two years of probation.

Williams filed this timely appeal.

## QUESTIONS PRESENTED

Williams presents two issues on appeal, which we quote:

1. Did the trial court abuse its discretion by allowing the State to ask a witness about Mr. Williams's prior battery conviction?

2. Did the trial court abuse its discretion by failing to give a complete response to jurors' question about second-degree assault?

For the reasons that follow, we answer both questions in the negative. Consequently, we shall affirm Williams's conviction.

## DISCUSSION

### I. The Admission of Williams's Prior Conviction for Battery

In general, "evidence of a person's character or character trait is not admissible to prove that the person acted in accordance with the character or trait on a particular occasion." Md. Rule 5-404(a)(1). In a criminal case, however, "[a]n accused may offer evidence of the accused's pertinent trait of character." Md. Rule 5-404(a)(2)(A). "If the evidence is admitted, the [State] may offer evidence to rebut it." *Id.*

In *Michelson v. United States*, 335 U.S. 469, 479 (1948), the Supreme Court explained: "The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him." If a defendant's character

- 7 -

witness is unaware of information bearing on the defendant's character, "the jury may doubt whether [the witness] is capable of giving any very reliable conclusions as to [the defendant's] reputation." *Id.* at 483.

Williams contends that his prior conviction was "too remote in time to be relevant." Alternatively, he contends that its probative value was substantially outweighed by the danger of unfair prejudice. We disagree that the court erred or abused its discretion in permitting the State to question the character witnesses about the conviction.[5]

## A. Relevance

A court may admit relevant evidence, but it has no discretion to admit evidence that is irrelevant. *Smith v. State*, 218 Md. App. 689, 704 (2014). A ruling that evidence is legally relevant is a conclusion of law, which we review *de novo*. *See id.* A prior conviction is relevant to impeach character testimony if it "impugns the particular character trait or traits in issue." *State v. Watson*, 321 Md. 47, 55 (1990).

Williams relies on *Watson* to establish that his prior conviction was "too remote in

---

[5] Although Williams himself raised the issue of the conviction with the second and third character witnesses, the State does not argue that he has waived his challenge to the court's ruling. *See Hunt v. State*, 321 Md. 387, 433 (1990) (quoting *Peisner v. State*, 236 Md. 137, 144 (1964), *cert. denied*, 379 U.S. 1001 (1965)) ("[t]he general rule is that a party waives his objection to testimony by subsequently offering testimony on the same matter'"); *compare Cure v. State*, 421 Md. 300, 305 (2011) (holding that when court has ruled *in limine* that State may impeach defendant with prior conviction, defendant does not necessarily waive the ability to challenge that ruling by bringing up the prior conviction while testifying on direct examination in order to "draw the sting" out of the conviction). Because the State does not argue waiver, we do not decide that issue.

time to be relevant" on cross-examination of his character witnesses.  *Watson* is inapposite.

In *Watson*, the defendant was charged with first-degree murder.  *Id*. at 49.  In his defense, he "called eight character witnesses, all of whom testified to their opinions as to [his] peaceful and non-violent character."  *Id*. at 50.  The State countered by cross-examining the character witnesses about their knowledge of the defendant's prior conviction for second-degree rape.  The circuit court allowed the cross-examination over the defendant's objection that the offense "did not involve force" and that "the conviction was for having sexual intercourse with a consenting 13-year-old girl."  *Id*. at 51.

On appeal, the Court concluded that the circuit court erred in allowing the State to use the conviction for second-degree rape in cross-examining the character witnesses, because "having sexual intercourse with a consenting 13-year-old girl [bore] little, if any, relationship to the defendant's character for peacefulness and non-violence."  *Id*. at 56.[6] Because the prior conviction was irrelevant to the character trait at issue, the *Watson* Court did not consider whether the conviction for second-degree rape was "too remote in time to be relevant."

In reaching its decision, the *Watson* Court referred to a multi-volume treatise on federal evidence, which, the Court said, "suggest[s]" that the trial judge should take the

_____

[6] Despite the references by Court and counsel to the 13-year-old victim's "consent," today we would recognize that she was legally incapable of consenting.

following steps when the State seeks to cross-examine a character witness about a defendant's prior misconduct:

> 1) determine that there is a good faith basis for the inquiry; 2) determine that the acts or events about which the [State] proposes to inquire are relevant to the particular character trait testified to by the witness on direct examination; 3) *determine that the acts are not too remote in time to be relevant cross-examination of the character witness*; 4) reject any inquiry where the prejudicial effect outweighs the probative value; and 5) if requested, instruct the jury that the purpose of the question is only to test the basis for the character witness' testimony.

*Id.* at 54 (quoting 2 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 138, at 152 (1985)) (emphasis added).

Nonetheless, *Watson* did not explore when a conviction is "too remote in time to be relevant" on cross-examination of character witnesses. Nor has any subsequent Maryland decision. Williams himself offers no guidance as to when a defendant's conviction might be so old and stale that, as a matter of law, it is irrelevant to impeach a witness's testimony about a defendant's character. Instead, Williams concedes that, "there is no hard-and-fast time limit for convictions to be subject to cross-examination of a character witness."[7]

Although Williams cites no authority besides the dicta in *Watson*, we have

---

[7] Williams does not argue that a court must apply the 15-year time limit that Rule 5-609 imposes on the use of convictions to impeach the credibility of a witness. In decisions concerning the analogous federal rule, courts have refused to apply that time limit to restrict the use of defendant's convictions to cross-examine a character witness. *See*, *e.g.*, *United States v. Edwards*, 549 F.2d 362, 367 (5th Cir. 1977), *cert. denied*, 434 U.S. 828 (1977); *State v. Hart*, 593 N.E.2d 463, 467 (Ohio Ct. App. 1991) ("Courts have previously rejected the notion that the ten-year limitation under Evid. R. 609, concerning impeachment by prior conviction, should be construed in conjunction with Evid. R. 405(A)") (quoting *Edwards*).

- 10 -

examined the treatises of Professor McLain, Judge Murphy, Judge Weinstein, McCormick, and Wigmore to see if they shed any light on when a conviction might be so remote that it becomes legally irrelevant for purposes of impeaching a character witness's credibility. None do. McCormick does, however, state that "most courts" adopt the "practical solution" of "accept[ing] testimony about reputation as of any pretrial time period which the judge in his discretion finds is not too remote." *McCormick on Evidence* § 43, at 282-83 (7th ed. 2013). Similarly, in *Michelson*, 335 U.S. at 484, the Supreme Court wrote that "[t]he court, in its discretion, may well exclude inquiry about rumors of an event so remote, unless recent misconduct revived them." In other words, although some convictions might be so old that they no longer have any conceivable bearing on the character of the person whom the defendant has become (*see*, *e.g.*, Victor Hugo, *Les Miserables* (1862)), the question of whether a conviction is too remote to be used to impeach a character witness's testimony is typically one for the trial court, in its discretion, to resolve. *State v. Cummings*, 422 S.E.2d 692, 703 (N.C. 1992) (it is within the sound discretion of the trial judge to determine whether a past instance of conduct should be excluded after weighing its probative value against the danger of unfair prejudice).[8]

Williams's 1990 battery conviction was not so old that, as a matter of law, it no

---

[8] The Louisell treatise, which the Court of Appeals quoted in *Watson*, no longer appears to be in print. A successor treatise asserts that the probative value of a conviction is doubtful if it concerns events that occurred more than 10 years in the past. *See* 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4.43, at 33 (4th ed. 2013). Nonetheless, the treatise cites no case for the proposition that such a conviction is irrelevant as a matter of law. Instead, the treatise cites a number of cases, including the

- 11 -

longer had any conceivable relevance to his character for peacefulness. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5-401. Williams's character for peacefulness was a "fact that [was] of consequence to the determination of the action," and we cannot say that Williams's battery conviction was too remote to have any bearing on whether he was a peaceful person or whether his character witnesses had a sound basis for their testimony. Even though the conviction was not particularly fresh, the jury might arguably have gotten an incomplete impression of Williams's character for peacefulness if it heard only the favorable accounts from his character witnesses and did not hear of his conviction for a violent act at an earlier stage in his life. The circuit court, therefore, did not err in concluding that the battery conviction was relevant for purposes of impeaching the

---

Supreme Court's decision in *Michelson*, in which courts have permitted the prosecution to cross-examine character witnesses with convictions that are more than 10, or even 20, years old. *Id.* at 33 n.41 (citing *Michelson*, 335 U.S. at 484 (permitting inquiry about arrest 27 years earlier, where some acquaintances had known defendant for 30 years, and defendant had volunteered information about another arrest 20 years earlier)); *United States v. Booz*, 451 F.2d 719, 722 n.1 (3d Cir. 1971) (permitting inquiry about conviction 13 years earlier); *United States v. Edwards*, 549 F.2d 362, 367 (5th Cir. 1977) (affirming court's exercise of discretion to permit inquiry about 25-year-old conviction, and rejecting argument that court should have applied 10-year limit contained in rule concerning impeachment of defendant with prior convictions bearing on character for truthfulness); *Harbin v. Interlake S.S. Co.*, 579 F.2d 99, 106 (6th Cir. 1978) (permitting inquiry about 13- and 15-year-old convictions); *Cummings*, 422 S.E.2d at 703 (affirming discretionary decision to permit inquiry about 23-year-old conviction); *see also United States v. Spero*, 625 F.2d 779, 780 (8th Cir. 1980) (district court did not err in admitting evidence of defendant's 22-year-old prior conviction where credibility of witnesses' testimony was crucial).

character witnesses.

### B.  Probative Value vs. Danger of Unfair Prejudice

Even if evidence is relevant, a court may exclude it "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Md. Rule 5-403.  The trial court declined to exclude the evidence of Williams's prior battery conviction on this ground.  We review that decision for abuse of discretion.  *See*, *e.g.*, *Carter v. State*, 374 Md. 693, 705 (2003).

When weighing the probative value of proffered evidence against its potentially prejudicial nature, a court abuses its discretion "where no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles."  *Webster v. State*, 221 Md. App. 100, 112 (2015) (citations and quotation marks omitted).  For the court to have abused its discretion, "[t]he decision under consideration has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable."  *King v. State*, 407 Md. 682, 697 (2009).  The decision "will not be reversed simply because the appellate court would not have made the same ruling."  *Id.*

Williams claims that the battery conviction was "hardly probative at all" because it occurred a decade or more before any of the character witnesses knew him.  Neither the circuit court nor the jury, however, was required to give the conviction the weight that Williams assigns to it.  Even though the conviction predated their friendship or association with Williams, the jury could have discounted the witnesses' testimony about

- 13 -

his character for peacefulness because they did not know of a violent incident in his past. *See Watson*, 321 Md. at 53. Alternatively, because the witnesses said that they maintained their good opinion of Williams after becoming aware of his conviction, the conviction may have led the jury to question the soundness of their judgment. *See id.*

Williams cites *Ricketts v. State*, 291 Md. 701 (1981), for the proposition that once the jurors were "informed that [Williams] had been previously convicted of the same [*sic*] crime in the past," they were "seriously prejudiced" against him. His reliance on *Ricketts* is misplaced.

*Ricketts* concerns the State's misuse of a prior conviction to impeach a defendant's own credibility. *Id.* at 714. In this case, however, no such risk existed. In closing, the State argued:

> I want to talk briefly about the Defense witnesses you heard from. You heard from a parade of the Defendant's friends who talked about how he was a peaceful or a non-violent person. Well, you know, when I asked them, were you aware the Defendant had ever been previously convicted of battery, none of them knew. None of them knew. Then I asked them if it would change their opinion. All of them: No, it wouldn't change my opinion. Are you kidding me? It's not going to change your opinion of this person that you know has been previously convicted of assaultive behavior. Are you kidding me? Friends are friends, but that doesn't make sense.

The State's use of Williams's prior conviction to challenge the reliability of the character witnesses' testimony was unequivocal. Unlike *Ricketts*, where the prior conviction "shed[] no light" upon the defendant's veracity (*id.* at 713-14), knowledge of Williams's prior conviction in this case "sheds light" upon the soundness of the character witnesses' judgment. *See Watson*, 321 Md. at 53.

Furthermore, even if the evidence of Williams's prior conviction was prejudicial,

it was not *unfairly* prejudicial, because the State's questions were not "an inquiry specifically directed to a prior bad act" (*Winters v. State*, 301 Md. 214, 232 (1984)), but an "effort to probe the veracity of the opinions offered and the witnesses' basis of knowledge in formulating those opinions." *Id.* at 233.

In summary, although a different judge might have reached a different conclusion, the trial court, in the exercise of its discretion, was not required to prohibit the State from impeaching the character witnesses with evidence of Williams's 25-year-old battery conviction. Because the character witnesses testified to Williams's reputation for peacefulness based on their experiences over as much as 15 years, it was not unreasonable for the trial court to permit the State to use Williams's conviction to challenge the basis for the witnesses' testimony. *Cf. Jackson v. State*, 340 Md. 705, 722 (1995) (concluding that it would be "patently unfair" to permit defendant to present a "stellar" picture of himself to the jury, but preclude the State to impeach him with evidence of a prior conviction that contradicts this image).

## II.    Jury Instruction on Defense of Property

During deliberations, the jury asked the trial court for the definition of second-degree assault. At that time, defense counsel asked the court to include a reinstruction on the defense of property, which Williams says was one of his defenses.[9] The court refused

---

[9] Although the court instructed the jury on defense of property, the State argues that Williams did not generate the defense (and hence that the court could not have erred in declining to reinstruct the jury on that defense). In particular, the State argues that Williams adduced no evidence of his belief that Swan was illegally interfering with his property. *See Maryland Criminal Jury Instructions and Commentary* § 8.04 (2014-2015 ed.). In view of Swan's testimony that she absconded with some of Williams's

to "highlight" it and, instead, recited the second-degree assault instruction that it had given earlier. *See* Maryland Criminal Pattern Jury Instructions ("MPJI-Cr") 4:01 (2d ed. 2013). The court apparently agreed with the State that reinstructing the jury on defense of property "would emphasize a particular instruction that they have not inquired about."

Williams complains that the court's refusal "left jurors with an incomplete instruction and inhibited Williams's defense." We disagree.

Under Maryland Rule 4-325(a), "[t]he court shall give instructions to the jury at the conclusion of all the evidence and before closing arguments and may supplement them at a later time when appropriate." "'The main purpose of a jury instruction is to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict.'" *Appraicio v. State*, 431 Md. 42, 51 (2013) (quoting *Chambers v. State*, 337 Md. 44, 48 (1994)). "Supplemental instructions can include an instruction given in response to a jury question." *Id.*

"We review a trial court's decision to give a particular jury instruction under an abuse of discretion standard." *Id.* The court's decision to give a particular jury instruction will not be disturbed on review except on a clear showing that it was manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Id.*; *see also Lovell v. State*, 347 Md. 623, 653-60 (1997) (suggesting that the refusal to

---

belongings in the hope that she could trade them for her phone, we assume for the sake of argument that Williams satisfied his minimal burden of generating some evidence to support an instruction on this defense. *See*, *e.g.*, *Dykes v. State*, 319 Md. 206, 216-17 (1990).

given an instruction is reviewed for abuse of discretion).

Had the jury inquired about the effect of Williams's claim of defense of property on the second-degree assault charge, then reinstruction on defense of property might have been necessary. *See, e.g.*, *State v. Baby*, 404 Md. 220, 263-64 (2008) (when jurors inquired about the effect of withdrawing consent during vaginal intercourse, it "was not sufficient" simply to refer the jury to the legal definition of rape); *Lovell*, 347 Md. at 659-60 (concluding that where the jury's question indicated concern about youthful age as a statutory mitigating circumstance, the trial court abused its discretion when it refused to provide further guidance on the term "youthful age").

In this case, however, the jury had asked only for the definition of second-degree assault, not for any further information concerning defense of property or its relation to second-degree assault. The trial court, therefore, was not required to reinstruct the jury on the defense of property.

## CONCLUSION

In both of the rulings challenged by Williams, the trial court acted within its discretion. "[W]hile the law gives [Williams] the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." *Michelson*, 335 U.S. at 479. Moreover, the jury's request for the definition of second-degree assault required only one answer.

**JUDGMENT OF THE CIRCUIT COURT
FOR ANNE ARUNDEL COUNTY**

- 17 -

**AFFIRMED.  COSTS TO BE PAID BY APPELLANT.**