**HAROLD EUGENE WILLIAMS**

      **v.**

**STATE OF MARYLAND**

| | |
|---|---|
| * | In the |
| * | Court of Appeals |
| * | of Maryland |
| * | COA-REG-0025-2017 |
| * | No. 25 |
| * | September Term, 2017 |

# O R D E R

The Court having considered the motion for reconsideration e-filed in the above-caption case, it is this <u>21st</u> day of <u>February</u>, 2018,

**ORDERED**, by the Court of Appeals of Maryland, that the motion be, and it is hereby, granted, and it is further

**ORDERED**, that the opinion in this case e-filed on January 19, 2018, be, and it is hereby, recalled and a new opinion dated February 21, 2018, e-filed simultaneously with this order shall replace the opinion e-filed on January 19, 2018.

<u>/s/ Mary Ellen Barbera</u>
Chief Judge

*Harold Eugene Williams v. State of Maryland,* No. 25, September Term 2017. Opinion by Hotten, J.

**CRIMINAL LAW – EVIDENCE – RELEVANCY OF PRIOR CONVICTION –** The Court of Appeals held that the trial court did not err in concluding that Williams' prior battery conviction was relevant to a character witness' testimony for Williams' peaceful reputation in the community. Even though Williams' prior conviction predated his relationship with each of his character witnesses, the conviction was not so remote that it had no relevant value to Williams' character for peacefulness. As such, it was not an error for the circuit court to admit evidence of the conviction.

**CRIMINAL LAW – EVIDENCE – PREJUDICIAL NATURE OF PRIOR CONVICTION –** The Court of Appeals held that the probative value of Williams' 1990 battery conviction was not so substantially outweighed by the danger of unfair prejudice that its admission was an abuse of discretion. An abuse of discretion may lie "where no reasonable person would take the view adopted by the trial court[ ]" *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243, 1254 (2014). A reasonable person could conclude that evidence of Williams' 1990 prior battery conviction was probative of his reputation for peacefulness some years later. Therefore, evidence of Williams' 1990 battery conviction was not so remote that admitting it at trial was an abuse of discretion.

Circuit Court for Anne Arundel County
Case No. C-02-CR-15-0006688
Argued: November 2, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 25

September Term, 2017

_____

HAROLD EUGENE WILLIAMS

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Watts, J., joins in judgment only.

_____

Filed: February 21, 2018

## FACTUAL AND PROCEDURAL BACKGROUND

This case stems from an incident between Petitioner, Harold Eugene Williams, and his then girlfriend, Angela Swan. Following an altercation between Williams and Swan, Williams was charged and later tried on seven counts, including first-degree assault, second-degree assault, reckless endangerment, three weapons-related offenses, and posting revenge pornography in violation of Md. Code (2002, 2012 Repl. Vol., 2016 Supp.), § 3-809 of the Criminal Law Article. A jury found Williams guilty of second-degree assault, acquitting him on the remaining charges. The following facts were adduced at trial:

Williams and Swan shared an intimate relationship from 2012 until October of 2015. In the last few months of the relationship, they frequently quarreled. Williams and Swan did not reside together, but Swan had a key to Williams' home, kept personal belongings there, and frequently spent the night. Swan testified that Williams' possessed a silver handgun and a rifle. Swan also testified that Williams kept the handgun under his pillow, and she would typically move the handgun under the bed when she stayed overnight. On October 23, 2015, Swan spent the night at Williams' home. The following morning, Swan went into Williams' bathroom wearing only a shirt. While Swan was using the second-floor bathroom, Williams, who was on the first floor, heard Swan's cell phone ringing. Williams picked up Swan's phone, and saw a text message from another man, along with messages from three other men. Williams also saw that Swan previously sent a nude photograph to someone. With Swan's phone in hand, Williams confronted Swan, and threw her phone at her. Williams called Swan a derogatory term and told her to leave. Before Swan could leave, Williams shoved her against the bathroom wall and began hitting

her body. Crying, Swan tried to leave the bathroom but Williams threw her into the hallway, on the floor. While Swan was on her back, Williams continued yelling, punching, and kicking Swan's body. Swan begged for time to get her things and leave. As she walked up the stairs to gather her belongings, Williams began walking down the stairs. According to Swan, Williams threw Swan's pants at her, and held a gun to her head while he used her cell phone to tell someone to come get Swan before he killed her. Swan testified that Williams then pushed her down the stairs, but she eventually got up, and went to the first floor to get her purse to leave. Williams came to the first floor, pushed Swan into a closet, and took her purse, but Williams still held the gun. Swan ran up to the second floor where she was able to grab a towel to wrap around her waist. She also took some of Williams' belongings with the intention of trading his things back for hers, and left the house.

After the confrontation, Swan drove to a nearby convenience store to call 911. She told the operator that Williams had attacked her and held a gun to her head, but that she did not need medical attention. A police officer arrived to assist Swan. Swan explained that Williams still had some of her belongings, including her cell phone. The officer went to Williams' house and retrieved Swan's cell phone. Once Swan secured her phone, she saw that her nude photograph posted to her Facebook account, but the police officer showed Swan how to delete the post. The day after the incident, Swan went to Northwest Hospital for treatment.

Williams testified in his defense, and denied punching, kicking, or threatening Swan with a gun. He denied that he even owned a gun. Williams testified that after he saw the nude photographs sent to other men on Swan's phone, he went into the second-floor

2

bathroom of his house and confronted Swan. He claimed that he repeatedly told her to leave, so he went to the first floor, opened the door, and threw her purse outside. Williams admitted that when Swan came downstairs she had a towel around her waist, which he tried to grab while pushing her out of the door, but that instead of leaving, Swan went back upstairs. Williams said he wanted Swan to leave, so he went to the third floor bedroom and threw her clothing down the steps, but not at her. Later, Williams went to his front door where he saw Swan, who demanded that Williams return her phone and indicated that she contacted the police. Williams left and went to his neighbor, Arkina Taylor's, house with Swan's phone. Williams returned home, and a few minutes later, the police arrived at his front door.

At trial, Williams' attorney and the trial judge explained to Williams that the State could use a previous battery conviction to impeach him. The following colloquy occurred at the bench:

> [DEFENSE COUNSEL]: It's my understanding, and am I correct, Mr. Miller, that you have no crimes of impeachment that you would be willing to use against Mr. Williams?
>
> [STATE]: I guess pursuant to the impeachment rule for prior convictions, going towards veracity, yes.
>
> THE COURT: So, are you saying that you have something else that you can get in from some other avenue?
>
> [STATE]: Well --
>
> THE COURT: I mean if he got on the stand and denied something, then, of course you could, but I'm --that's not likely to come up.
>
> [STATE]: Yeah, and I don't want to -- I will approach before making my argument on that, and I don't want to give my arguments away –

THE COURT: Uh-huh.

[STATE]: -- but do I have -- there is a disqualifying offense, which theoretically could become relevant.

\* \* \* \*

[STATE]: I think there are scenarios where the door may be open for some of his prior convictions to come in.

THE COURT: Okay. I can't conceive of that, but you may be absolutely correct; maybe that's what will happen. And I assume you've spoken to your client about that?

[DEFENSE COUNSEL}: Yes. Let me just break that down into regular English.

THE COURT: Okay.

[QUESTIONS BY DEFENSE COUNSEL]:

[DEFENSE COUNSEL]: You don't have any convictions in your background that the State could use as impeachment in terms of moral turpitude, so the State cannot use any past convictions to say, hey, you're a bad person. Do you understand that?

[WILLIAMS] Yes.

THE COURT: Or that he's a liar.

[STATE]: It's not just about -- yeah.

[QUESTIONS BY DEFENSE COUNSEL]:

[DEFENSE COUNSEL]: Right. Or that you're lying. Do you understand that?

[WILLIAMS]: Yes.

[DEFENSE COUNSEL]: Now, if you testify certain ways, maybe one or more of your past convictions may come in to prove that you're lying. Do you understand that?

4

[WILLIAMS]: Yes.

[DEFENSE COUNSEL]: Do you have any questions about that?

[WILLIAMS]: No.

Williams called his former neighbor, Arkina Taylor, to testify as a character witness. Taylor knew Williams for ten years and opined that he was "[a] hard-working fun-loving guy that just likes to have a good time." Taylor testified that Williams had a reputation in the community for being a peaceful person, and that she had never seen him become violent or with a firearm.

After Taylor's direct examination, the State requested to approach the bench. The following colloquy occurred:

> [STATE]: Your Honor, this is the exact scenario I was talking about. Now that she has said he's a peaceful person --
>
> THE COURT: Uh-huh.
>
> [STATE]: -- the State is entitled to rebut that by asking her if she's aware that he has a prior conviction for battery.
>
> THE COURT: Uh-huh. I think you are, too. Do you want to say anything about it?
>
> [DEFENSE COUNSEL]: I do. I think that the State should not be allowed to do that. If the State knew the specific facts of what that battery is, they --
>
> THE COURT: Well, why would that be, because I don't think the State is allowed to get into the facts; all they're allowed to do is ask that single question. Remember, they're not allowed to say or ask for their --
>
> [DEFENSE COUNSEL]: I would think at this point, that they're referring to a conviction back in 1990 and I think it's certainly more prejudicial than probative and I don't think the State should be allowed --
>
> [STATE]: It is 1990, Your Honor.

5

THE COURT: 1990. If she's known him for 10 years --

[STATE]: But they're -- it's her best friend, so it's very relevant if she [sic] ever told him if she is aware of his prior convictions --

THE COURT: Uh-huh.

[STATE]: -- that he's a peaceful and non-violent man. I mean it's completely relevant, Your Honor.

THE COURT: Uh-huh. I think it is, too.

[DEFENSE COUNSEL]: And I would just argue that this is a conviction that dates back 25 years.

THE COURT: Uh-huh.

[DEFENSE COUNSEL]: It dates a full 16 years prior to her knowing him.

THE COURT: Does that make any difference?

[DEFENSE COUNSEL]: I think it does. I think it's certainly more prejudicial than probative.

THE COURT: Well, here's the problem I'm having and maybe you can help me with this; there's a difference between admitting it (indiscernible - 10:52:04) and admitting it because it may not be a true fact, if he's always been a peaceful man, right?

[DEFENSE COUNSEL]: Uh-huh.

THE COURT: And I think the State is trying to get it in to show that he's not peaceful. And so there's no requirement that it did not date back to at least-- you know, even in 15 years.

[DEFENSE COUNSEL]: I think there is. I specifically asked whether or not, based upon her knowledge of him and the length of time that she knew him, that he was peaceful, and based upon that, her knowledge, and those ten years of his reputation in the community, I think unless the State has some other hinge of evidence that he's gotten a reputation, based upon that past prior for being not peaceful or being violent, it shouldn't be allowed.

* * * *

6

[STATE]: They opened the door. They put his peacefulness in evidence.

THE COURT: Uh-huh.

[STATE]: Whether--and I'm not going to do this--first off, I do it (indiscernible - 10:53:03) how well she knows him, because if she doesn't know about this, then she really doesn't know him that well, and if she does know about this, then he's not a peaceful--his reputation is in question. They've completely opened this door--

THE COURT: I think it comes in and the [State] will be entitled to say, knowing that, does that change your opinion of his peaceful character.

On cross-examination, the State asked Taylor if she was aware of Williams' prior battery conviction. She indicated that she was not. When asked whether a previous battery conviction would change her opinion of Williams as a peaceful or violent person, she indicated it would not.

Dana Webb, Williams' former girlfriend, and Kamran Jones, Williams' family friend and co-worker, also testified on Williams' behalf. Webb had known Williams for six years, and testified that Williams has a reputation in the community for peacefulness, generosity, and kindness. She had never seen him with a firearm. When asked by Williams' attorney whether Webb was aware a prior conviction for battery, she indicated she was not. When asked if that would alter her opinion of Williams, she said it would not. Jones testified that he has known Williams for fifteen years, and had never seen him with a firearm. Jones explained that Williams has a reputation in the community for being a peaceful person, a businessman, and entrepreneur. When asked by Williams' attorney whether Jones was aware a prior conviction for battery, he said he was not. When asked if that would change his opinion of Williams, he said it would not. The State revisited

7

Williams' previous battery conviction on cross-examination of Webb and Jones, and the witnesses reiterated their earlier responses.

At the end of the State's case-in-chief, the trial court granted Williams' motion for judgment of acquittal on the charge of posting revenge pornography. The State entered a nolle prosequi on the charge of use of a handgun in the commission of a felony. The trial court submitted the remaining counts to the jury. The jury returned a guilty verdict on the second-degree assault count and acquitted Williams of the four remaining counts. The trial court imposed a sentence of three years imprisonment, with all but six months suspended, to be followed by two years of supervised probation. Williams filed a timely appeal to the Court of Special Appeals.

On appeal, Williams argued that the trial court improperly admitted evidence of his 1990 battery conviction ("1990 battery conviction"). *Williams v. State*, 232 Md. App. 342, 351, 157 A.3d 398, 402–03, *cert. granted*, 454 Md. 679, 165 A.3d 474 (2017). Williams contended that, as a matter of law, the 1990 battery conviction was too remote in time to be relevant. *Id.* Alternatively, Williams contended that the probative value of the battery conviction was substantially outweighed by the danger of unfair prejudice, and admission of the prior conviction was an abuse of discretion. *Id.* In a reported opinion, the Court of Special Appeals affirmed Williams' conviction. *Id.* at 360, 157 A.3d at 408. The intermediate appellate court reasoned that Williams' 1990 battery conviction was not so old that, as a matter of law, it no longer had any conceivable relevance to his character for peacefulness. *Id.* at 355, 157 A.3d at 405. The Court of Special Appeals held that the trial court, in the exercise of its discretion, was permitted to allow the State to impeach character

witnesses with evidence of Williams' 25-year-old battery conviction. *Id.* at 357, 157 A.3d at 406. Each character witness testified regarding Williams' reputation for peacefulness, thus, it was not unreasonable for the trial court to permit the State to use Williams' conviction to challenge the basis for the witnesses' testimony.[1] *Id.* In a timely manner, Williams filed a Petition for Writ of Certiorari to this Court.

## QUESTIONS PRESENTED

Williams presents the following three questions for our review:

1. Is a conviction that is more than fifteen years old irrelevant as a matter of law to a character witness' opinion about a defendant?

2. Were questions revealing Williams' prior conviction, which occurred at least a decade before any of his character witnesses had met him, irrelevant to their opinions as to his reputation for peacefulness?

3. Were questions revealing Williams' prior conviction substantially more prejudicial than they were probative of the witnesses' opinions as to his reputation for peacefulness?

For the reasons that follow, we answer each question presented in the negative and affirm the Court of Special Appeals.

## STANDARD OF REVIEW

Interpretation of the Maryland Rules presents a question of law, and are thus reviewed *de novo* to ascertain whether the trial court was legally correct in its rulings. *State v. Graves,* 447 Md. 230, 240, 135 A.3d 376, 382 (2016); *Lisy Corp. v. McCormick & Co.*,

---

[1] Williams additionally challenged the trial court's refusal to give the jury a reinstruction on defense of property. *Id.* 232 Md. App. at 359, 157 A.3d at 407. The Court of Special Appeals held that the trial court did not err in refusing reinstruction, and jury instructions are not at issue before this Court. *Id.*

9

445 Md. 213, 221, 126 A.3d 55, 60 (2015); *Williams v. State*, 435 Md. 474, 483, 79 A.3d 931, 936 (2013); *State v. Daughtry*, 419 Md. 35, 46, 18 A.3d 60, 67 (2011); *DRD Pool Serv., Inc. v. Freed*, 416 Md. 46, 62, 5 A.3d 45, 55 (2010); *Khalifa v. Shannon*, 404 Md. 107, 142, 945 A.2d 1244, 1264 (2008); *Gray v. State*, 388 Md. 366, 375, 879 A.2d 1064, 1068 (2005); *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78, 80–81 (2004). *See Cole v. State*, 378 Md. 42, 56, 835 A.2d 600, 607 (2003) (observing that the application of the Maryland Rules to a particular situation is a question of law reviewed *de novo*). When the circuit court determines whether a piece of evidence is relevant, that is a legal conclusion, which is reviewed without deference. However, the circuit court's decision to admit relevant evidence is reviewed for an abuse of discretion. An abuse of discretion occurs where no reasonable person would take the view adopted by the circuit court. *Fuentes v. State*, 454 Md. 296, 325, 164 A.3d 265, 282 (2017); *Alexis v. State*, 437 Md. 457, 478, 87 A.3d 1243, 1254 (2014). Therefore, we interpret the Maryland Rules *de novo*, and review the trial judge's admissibility determinations for an abuse of discretion.

## DISCUSSION

Although Williams presents three questions for our consideration, Williams' arguments rest primarily on two grounds; first, whether Williams' prior battery conviction is relevant to his current reputation for peacefulness, and second, whether the probative value of the 1990 conviction is substantially outweighed by the danger of unfair prejudice. On relevancy grounds, Williams argues that this Court should hold that evidence of a defendant's prior conviction that is more than fifteen years old, and thus inadmissible for impeachment under Maryland Rule 5-609, is also irrelevant to rebut the testimony of a

character witness under Maryland Rule 5-404(a)(2)(A). Williams asks us to hold that even if we do not apply a fifteen-year limit on rebuttal evidence, that the evidence was not relevant because it was substantially more prejudicial than probative. Williams' 1990 battery conviction predated the time when any of the character witnesses had known Williams by at least a decade, and was similar to the crime for which he was on trial. For reasons we will explain, we decline to adopt a fifteen-year limitation for rebuttal evidence. Further, the probative value of the evidence here was not substantially outweighed by the danger of unfair prejudice.

## I.   Relevance of the 1990 Battery Conviction

Williams asserts that the 1990 battery conviction is too remote in time to be probative. Particularly, he asserts that because the battery conviction was fifteen years before he met Taylor, the prior conviction cannot be probative of Taylor's opinion of Williams' reputation for peacefulness in the community as of 2015, roughly twenty-five years later. We have explained that "[t]he determination of whether evidence is relevant is a matter of law, to be reviewed *de novo* by an appellate court." *Fuentes*, 454 Md. at 325, 164 A.3d at 282 (internal citation omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* In other terms, evidence is relevant if it has any tendency to make any fact more or less probable. *Id.* Having "any tendency" to make "any fact" more or less probable is a very low bar to meet. *State v. Simms*, 420 Md. 705, 727, 25 A.3d 144, 157 (2011). We have explained that for evidence to be relevant, "[t]he proper inquiry is whether the evidence could support an

11

inference that the defendant's conduct demonstrates a consciousness of guilt. If so, the evidence is relevant and generally admissible." *Id.* (quoting *Thomas v. State*, 397 Md. 557, 577, 919 A.2d 49, 61 (2007) (emphasis omitted).

Generally, the "State may not offer, as proof of guilt, evidence that the defendant is a person of bad character and, therefore, likely to commit the offense charged." *State v. Watson*, 321 Md. 47, 52, 580 A.2d 1067, 1069 (1990). Simply put, evidence of an individual's character or character trait is inadmissible to prove that on a particular occasion, that individual acted in accordance with that character trait. Md. Rule 5-404(a)(1). The commonly known caveat to the general rule allows a criminal defendant to offer evidence of his own pertinent character trait. *Id.* 5-404(a)(2)(A). However, once the defendant offers evidence of that character trait, the State may offer evidence to discolor a showing of that same trait. Md. Rule 5-404(a)(2)(A). *See id.* (stating "[a]n accused may offer evidence of the accused's pertinent trait of character. If the evidence is admitted, the prosecution may offer evidence to rebut it[ ]"). *See also Watson*, 321 Md. at 52, 580 A.2d at 1069 (explaining that if a character witness testifies about the defendant's good character for a relevant trait, the State may offer evidence to establish the defendant's bad character for that same trait). As prescribed by the rule, Williams was able to introduce evidence of his character for peacefulness through three character witnesses, Taylor, Webb, and Jones.

The Maryland Rules also prescribe the method and means that a party must employ to prove or rebut character evidence. Maryland Rule 5-405(a) explains that when evidence of a person's character trait is "admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into

12

relevant specific instances of conduct." Md. Rule 5-405(a). Thus, the defendant may call a witness to testify regarding the witness' personal opinion of the defendant's pertinent trait, or about the defendant's reputation for that pertinent trait. Here, Williams called three character witnesses, but argues that his 1990 battery conviction was too remote in time to be relevant because the conviction occurred at least a decade before Williams knew any of the three witnesses. Thus, Williams contends that the 1990 battery conviction is not probative of his character for peacefulness because the conviction predated his relationship with the witnesses, and therefore the witnesses' impression of Williams' reputation.

Before the Court of Special Appeals, Williams relied on *State v. Watson,* and argued that his prior conviction was too remote in time to be relevant of his character during cross-examination of his character witness. Williams employs the same approach before this Court. The Court of Special Appeals determined that *Watson* was inapposite, and we agree. *Williams*, 232 Md. App. at 352, 157 A.3d at 403. In *Watson*, the defendant was charged with first-degree murder. *Watson*, 321 Md. at 49, 580 A.2d at 1068. Prior to trial, Watson moved *in limine* to preclude the State from introducing evidence of a six-year old conviction for "second-degree rape" under Maryland Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.), Article 27, § 463(a)(3), which makes it unlawful to have vaginal intercourse with a person under the age of fourteen, when the defendant is more than four years older than the victim. *Id.* at 50, 580 A.2d at 1068. An investigation of the second-degree rape revealed that Watson and the thirteen year-old victim "engaged in vaginal intercourse on more than one occasion, but the victim but was never forced to do so. The victim also stated that she was in love with the accused." *Id.* at 51, 580 A.2d at 1069. Prior to trial,

the trial judge properly precluded cross-examination on the second-degree rape conviction because it was not a common law crime relevant to Watson's credibility. *Id.* at 50, 580 A.2d at 1068.

During the trial, Watson called eight character witness on his behalf, who all testified to his peaceful nature and non-violent character. *Id.* Over defense counsel's objection, the State cross-examined the character witnesses as to whether they were aware that Watson was convicted of second-degree rape, and whether that knowledge caused them to change their opinions. *Id.* Most of the witnesses were aware of the rape conviction and testified that it did not change their opinion. *Id.* at 50–51, 580 A.2d 1068. In an unreported opinion, the Court of Special Appeals concluded that the trial court erred in admitting evidence of the second-degree rape conviction, and reversed Watson's murder conviction. *Id.* at 51, 580 A.2d at 1069. We granted certiorari to determine whether Watson's second-degree rape conviction "was admissible to impeach the opinions expressed by defense witnesses who testified to Watson's good character for peacefulness and non-violence." *Id.* at 51–52, 580 A.2d at 1069.

In *Watson*, we affirmed the Court of Special Appeals and agreed that the trial court erred in allowing the State to use a second-degree rape conviction during cross-examination of a character witness, because having sex with a consenting thirteen year-old girl bore little relationship to the defendant's character for peacefulness. *Id.* at 56, 580 A.2d at 1071. *Watson*'s premise is that Watson's second-degree rape conviction was "irrelevant to the impeachment issue for which it was offered." *Id.* (internal citations omitted). Our conclusion that *Watson* does not support Williams' position could end here,

14

because unlike Watson's second-degree rape conviction that had no bearing on his character for peacefulness, Williams' does.

Williams' conviction for battery, then a common law crime, was previously defined as the "unlawful beating of another[.]" *Kellum v. State*, 223 Md. 80, 85, 162 A.2d 473, 476 (1960). We have also defined common law battery as the "unlawful application of force to the person of another[,]" *Snowden v. State*, 321 Md. 612, 617, 583 A.2d 1056, 1059 (1991), and as "'*any* unlawful force used against the person of another, *no matter how slight* [.]'" *Edmund v. State*, 398 Md. 562, 571, 921 A.2d 264, 269 (2007) (quoting *State v. Duckett*, 306 Md. 503, 510, 510 A.2d 253, 257 (1986) (internal citations omitted). *See also Lamb v. State*, 93 Md. App. 422, 448, 613 A.2d 402, 414 (1992) (quoting R. Perkins, *Criminal Law*, 152–153 (3d ed. 1982) (defining battery as "an application of force to the person of another 'by the aggressor himself, or by some substance which he puts in motion.'"). As the variations of common law battery demonstrate, battery is the unlawful forceful touching by one person to another. Battery undoubtedly bears on an individual's character for non-violence. Therefore, Williams' argument that *Watson* supports his position fails, because the prior conviction at issue here, unlike in *Watson*, is indicative of one's character for peacefulness. *Watson* also did not involve a conviction that was "too remote in time to be relevant" on the character witnesses' cross-examination. At issue then is the relevance of the 1990 battery conviction if it predates Williams' relationship with all of his character witnesses.

On the point of the remoteness of his conviction, Williams offers no authority. The Court of Special Appeals held, and Williams concedes, that there is no time bar for prior

15

convictions expressly stated in Maryland Rule 5-404(a)(2)(A). However, Williams asserts that the limitation explicitly stated in Maryland Rule 5-609, should apply here. Williams argues that a conviction that predated the witnesses' relationships with Williams by ten to nineteen years had no relevance to their opinions about his reputation in the community in 2015, and asks us to read the same fifteen-year limitation expressly written in Maryland Rule 5-609, implicitly in Maryland Rule 5-404. *See* Md. Rule 5-609(b) ("[e]vidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction, except as to a conviction for perjury for which no time limit applies").

It is well established that when we interpret the Maryland Rules, we first examine the plain language. *Id.* at 88, 46 A.3d 413, 420. After this step, our analysis ends if:

> the words are clear and unambiguous.... Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent. We are also to give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. Finally, we seek to give the rule a reasonable interpretation, not one that is illogical or incompatible with common sense.

*State v. Taylor*, 431 Md. 615, 630–31, 66 A.3d 698, 707 (2013) (quoting *Brown & Williamson Tobacco Corp. v. Gress*, 378 Md. 667, 676, 838 A.2d 362, 367 (2003) (internal citations omitted). Following these cardinal rules of interpretation we decline to read a fifteen-year limitation into Maryland Rule 5-404 where none exists. Where Williams has offered no compelling reason for the bright line limitation, and the statute provides for no indication that one should be implicitly included, we shall not read language into a statute that is not consistent with legislative intent.

16

Williams' character for peacefulness was placed at issue when he called three character witnesses to testify regarding his peaceful and non-violent nature. In conformance with the Maryland Rules, once Williams' counsel began that line of questioning, the door was opened for the State to cross-examine Williams' witnesses on that issue. It appears from the first colloquy referenced *supra,* among the State, Williams' counsel, and the trial court, that Williams was made aware that the State could use this conviction to discredit any proffered character for peacefulness. Because Williams placed his character at issue, the State was entitled to rebut that evidence. The 1990 battery conviction was not so old, that it failed to meet the low bar of making "any fact that is of consequence to the determination of the action more probable or less probable[.]" Md. Rule 5-401. Evidence of a violent character, as a matter of law, had some bearing on the action at issue, an assault. Even though the conviction was some years before any of the witnesses knew Williams, the evidence allowed the jurors to weigh all pertinent aspects of Williams' character for non-violence. As the Court of Special Appeals affirmed, "the jury might arguably have gotten an incomplete impression of Williams'[] character for peacefulness.…" *Williams*, 232 Md. App. at 355, 157 A.3d at 405. Therefore, the trial court did not err in deciding that the 1990 battery conviction bore some legal relevance to the character witnesses' testimony.

## II.    The Value of the 1990 Battery Conviction

Williams next contends that even if this Court decides that evidence of his 1990 battery conviction was relevant, its probative value is substantially outweighed by the danger of unfair prejudice. Even relevant evidence must be excluded "if its probative value

is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Md. Rule 5-403. Improper cross-examination of a character witness can be highly prejudicial. However, "a decision to admit relevant evidence over an objection that the evidence is unfairly prejudicial will not be reversed absent an abuse of discretion." *Merzbacher v. State*, 346 Md. 391, 405, 697 A.2d 432, 439 (1997).

Williams repeats that evidence of the 1990 battery conviction was not probative at all because it occurred before any of his character witnesses knew him, but adds that the evidence was also highly prejudicial. Williams additionally includes that there was little, if any, probative value in the witnesses' lack of knowledge about the 1990 battery conviction because a person could be very familiar with Williams during that time period without being aware of the conviction. Williams asserts that the jurors were prejudiced against him because they were informed of the 1990 battery conviction at trial. Williams was on trial for second-degree assault, and the jury was instructed on the battery modality of assault. *See* Md. Code, (Repl. Vol. 2012) Criminal Law Article, § 3-201 (defining assault as "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings[ ]"). As before the Court of Special Appeals, Williams relies on authority from *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981) and *Michelson v. State*, 335 U.S. 469, 69 S. Ct. 213, 93 L. Ed. 168 (1948).

Williams quotes *Ricketts'* premise that, "[w]here the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted

the danger is greater, as the jury may conclude that because he did it before he most likely has done it again." *Ricketts*, 291 Md. at 703, 436 A.2d at 908. A jury convicted Ricketts on charges of second-degree rape, second-degree sexual offense, and burglary. *Id.* at 702, 436 A.2d at 907. When Ricketts testified in his own defense, the trial judge allowed the prosecutor to question Ricketts about a three-year old conviction for indecent exposure, which was then used to impeach his credibility. *Id.* The *Ricketts* Court cautioned against admitting impeachment evidence of a similar prior crime because "[t]he net effect of such evidence is often to discourage the defendant from taking the stand." *Id.* at 703, 436 A.2d at 908.

The portion of *Ricketts* cited by Williams, and the facts at issue in *Ricketts*, are inapposite to Williams' position for two primary reasons. First, Williams' reliance on *Ricketts* is improper because the *Ricketts'* Court cautioned against admission of prior crimes for impeachment purposes during the defendant's testimony. Williams testified in his own defense, and evidence of the 1990 battery conviction during his testimony is not the error that he complains of here. Rather, he finds issue with the impeachment of character witnesses' opinions' after testifying to his strong reputation for peacefulness in the community. *Ricketts* does not involve character witnesses. Second, the *Ricketts* Court resolved that Ricketts' past conviction for indecent exposure, had no bearing on a moral depravity to sufficiently impact his credibility. *Id.* at 710, 436 A.2d at 911. As discussed previously, a battery, which requires an application of unlawful force to another person, bears on a person's character for non-violence. Here, the 1990 battery conviction has a relation, albeit lengthy, to Williams' character for peacefulness.

19

Williams' reliance on *Michelson* to assert that his 1990 battery conviction was so remote that the prejudicial nature substantially outweighed the evidence's probative value, is also unpersuasive. In 1947, Michelson was charged with bribing a federal revenue agent. *Michelson*, 335 U.S. at 470, 69 S. Ct. at 216. Michelson testified in his own defense. During direct-examination, his own counsel brought out that, in 1927, he was convicted of a misdemeanor for trading in counterfeit watch dials. *Id.* at 471, 69 S. Ct. at 216. On cross-examination Michelson was asked about an incident in 1930, where executing an application for a license to deal in second-hand jewelry, he answered 'No' to the question whether he had previously been arrested or summoned for any offense. *Id.* Michelson called five character witnesses, who all testified that he had a good reputation. *Id.* On cross-examination, the Government asked four of the five witnesses if they heard that Michelson was arrested for receiving stolen goods twenty-seven years prior. *Id.* None of the witnesses appeared to be aware of Michelson's previous arrest. *Id.*

While affirming that questions asked to ascertain the witness' knowledge of rumors, are not allowed, the Court explained that "[e]vents a generation old are likely to be lived down and dropped from the present thought and talk of the community and to be absent from the knowledge of younger or more recent acquaintances. The court in its discretion may well exclude inquiry about rumors of an event so remote, unless recent misconduct revived them." *Michelson*, 335 U.S. at 484, 69 S. Ct. at 222. Williams' prior battery is not a rumor. The evidence here does not involve musings of Williams' reputation currently, or in 1990, but an actual conviction. Further, an allegation for receiving stolen goods does not bear on an individual's peaceful character like a conviction for battery. As such, the

20

proposition from *Michelson*, that rumors should not be revived on cross-examination, does not support this scenario where Williams has previously been convicted for a crime bearing on his character for peacefulness.

Other than the references to *Michelson* and *Ricketts*, Williams offers no additional authority demonstrating that it was an abuse of discretion for the trial court to admit evidence of Williams' 1990 battery conviction because its probative value was substantially outweighed by unfair prejudice. The crux of Williams' argument demands that it was highly prejudicial to inform the jurors of Williams' 1990 battery conviction, when the jurors were similarly being asked to decide if Williams committed the battery modality of assault. All evidence, by its nature, is prejudicial. A defendant, however, must suffer unfair prejudice for exclusion under Maryland Rule 5-403. The prejudicial nature necessarily must be measured in comparison to the evidence's probative value. As we have discussed, the 1990 battery conviction had some probative value because previously committing a battery directly pertains to an individual's peaceful nature, which is at issue in Williams' case. Given the probative nature of the evidence, it was reasonable to allow the jury to consider the evidence. Critical to our determination that the prejudicial nature was not unfair, is that Williams was acquitted of the greater charge of first-degree assault, and numerous other offenses. Thus, it was not an abuse of discretion for the trial judge to admit evidence of Williams' 1990 battery conviction.

## CONCLUSION

Accordingly, we conclude that Williams' 1990 battery conviction was not irrelevant as a matter of law. We decline to read a fifteen-year limitation into Maryland Rule 5-404.

21

Williams' 1990 battery conviction had some bearing on his character for peacefulness, making some fact in the trial court's proceeding more or less probable. Additionally, where a statute is unambiguous we apply the statute's plain language. Here, Maryland Rule 5-404 unambiguously does not provide a fifteen-year limitation for rebuttal evidence, thus we decline to create one where no clear avenue exists. It was not an abuse of discretion for the trial judge to admit evidence of the 1990 battery conviction. The relevance of the jurors having a complete picture of Williams' character was not substantially outweighed by the danger of unfair prejudice.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Judge Watts joins in judgment only.